**Irving B. BRICK, Appellant,**

v.

**Cecil B. ANDRUS, Office of the Secretary, United States Department of the Interior.**

**No. 79–1766.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 21, 1980.

Decided June 6, 1980.

Samuel Intrater, Washington, D. C., with whom Albert Brick, Washington, D. C., was on the brief, for appellant.

Gail Osherenko, Atty., Dept. of Justice, Washington, D. C., with whom James W. Moorman, Asst. Atty. Gen., and Jose N. Uranga and Edward J. Shawaker, Attys., Dept. of Justice, Washington, D. C., were on the brief, for appellee.

Before WRIGHT, Chief Judge, SPOTTS-WOOD W. ROBINSON, III, Circuit Judge, and AUBREY E. ROBINSON, Jr.,* District Judge.

Opinion for the court filed by Chief Judge J. SKELLY WRIGHT.

J. SKELLY WRIGHT, Chief Judge:

This appeal is from a District Court order granting summary judgment in favor of the Secretary of the Department of the Interior (Secretary) in an action brought by appellant Brick to review a decision of the Secretary rendered by the Interior Board of Land Appeals (IBLA), *Irving B. Brick*, 36 IBLA 235 (1978). The IBLA decision modified and affirmed a decision by the Wyoming State Office of the Bureau of Land Management (BLM) rejecting Brick's offer for a noncompetitive oil and gas lease for failure to comply with Department of the Interior (Department) regulations. Because we agree with Brick that the Secretary's decision was arbitrary and capricious, we reverse the judgment of the District Court and remand the case to that court for remand to the Secretary with instructions to reinstate Brick's offer.

I

Under Section 17(c) of the Mineral Lands Leasing Act of 1920, as amended, 30 U.S.C. § 226(c) (1976), the Secretary may issue an oil and gas lease for public lands to the "person first making application" who qualifies under the requirements for holding a lease. These leases are termed "noncompetitive leases" and may only be issued for land not within the "known geological structure of a producing oil or gas field." *Id.* Since 1959 the Department has awarded many of these leases by means of a lottery.[1] Each BLM state office posts a monthly list of parcels available for oil and gas leases, and interested parties tender offers for these leases by submitting entry cards. All valid entry cards filed during a specified period are considered as simultaneously filed, and thereafter a drawing is held and three entry cards are drawn for each parcel. The offeror whose entry card is drawn first is, if qualified to hold the lease, the first person eligible to be issued the lease for the parcel in question. If the card is defective or the offeror is disqualified for some other reason, the entry card drawn second is considered, and then the third. The Department's regulations state that offers to lease must be submitted "on a form approved by the [BLM] Director, 'Simultaneous Oil and Gas Entry Card' signed and fully executed by the applicant[.]" 43 C.F.R. § 3112.2–1(a) (1979).

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

1. *See* 43 C.F.R. §§ 3110.1–6(b), 3112 (1979).

The Secretary, acting through the BLM and the IBLA, has consistently held that strict compliance with these regulations is required.[2]

In September 1977 Brick submitted an entry card for the drawing on Parcel WY–76 then listed as available for leasing by the Wyoming State Office of the BLM. At the public drawing held on October 14, 1977 Brick's entry card was drawn first for Parcel WY–76. Under the Department's regulations Brick should therefore have been the first person eligible to lease this parcel; however, on October 21, 1977 Brick was notified by the Wyoming Office that his offer had been disqualified because his name and address were shown on the entry card by means of an address label glued to the card. This, the Wyoming Office pointed out, violated a Public Notice issued by the Office which indicated that it would reject any entry cards marked or altered in any manner that altered the feel and appearance of the card. Brick appealed this decision to the IBLA, which rejected the reason the Wyoming Office gave for disqualifying Brick's offer. The IBLA noted that it had previously held:

> The exclusion from the drawing of oil and gas drawing entry cards for trivial and inconsequential alterations which do not affect the appearance or feel of the cards in any significant way and which obviously were not intended to adversely affect the integrity of the drawing is arbitrary and capricious.

36 IBLA at 236, *quoting Margaret A. Ruggiero*, 34 IBLA 171 (1978).[3] The IBLA nevertheless affirmed the Wyoming Office's decision, finding that Brick's offer was *prima facie* defective because Brick had not entered his name on the entry card in the proper order indicated by the instructions on the card—last name, first name, middle initial. Instead, the address label on his entry card read "Dr. Irving B. Brick." Brick sought review of the IBLA decision in the District Court, arguing that the action of the Department in rejecting his offer was arbitrary, capricious, and an abuse of discretion.[4] On cross-motions for summary judgment District Judge Gesell granted judgment for the Government. This appeal followed.

## II

Appellant Brick presents two arguments in support of his position that IBLA's decision should be reversed. First, he argues that the decision to reject his offer was arbitrary and capricious. Second, Brick contends that even if the Department could properly have rejected his entry card, it waived any objections it may have had to the form of his card by accepting it for the drawing.

The Secretary defends the rejection of Brick's offer as reasonable and consistent with the Department's practice of insisting on strict compliance with its regulations. He notes that these regulations have been interpreted as requiring complete and proper responses to all information blanks on the entry cards.[5] He argues that strict enforcement of the requirement of properly completed drawing entry cards is made necessary by the magnitude of the program.[6] In addition, strict enforcement preserves the integrity of the program by eliminating

---

2. *See, e. g., Walter M. Sorenson*, 32 IBLA 345 (1977), *aff'd sub nom. Sorensen v. Andrus*, 456 F.Supp. 499 (D.Wyo.1978); *Raymond F. Kaiser*, 27 IBLA 373 (1976); *Gerald C. Calhoun*, 27 IBLA 362 (1976).

3. The IBLA also ruled that the Wyoming State Office's Public Notice was invalid because it contravened the instructions of the Director of the BLM.

4. Brick also alleged that the agency's action violated unspecified constitutional rights and privileges, deprived him of liberty and property without due process of law, and violated the

Administrative Procedure Act, 5 U.S.C. §§ 552, 553 (1976), by not giving notice that the agency would not accept address stickers on drawing entry cards.

5. *See* cases cited in note 2 *supra*.

6. The Secretary notes that the simultaneous oil and gas lease drawings attract thousands of offers each month and well over two million each year. The BLM Wyoming State Office apparently receives over half of the entry cards filed. Brief for appellee at 12.

any discretion on the part of BLM employees to decide which improperly completed cards will be accepted, thereby limiting the possibility of fraud and collusion. The Secretary further argues that a properly completed name on drawing entry cards is important in order to protect the rights of other offerors, and it helps the BLM to enforce the acreage limitations imposed by the Act[7] by eliminating any confusion about names.

## III

The Secretary presents a number of plausible arguments in support of both the Department's insistence on properly completed entry cards and its strict enforcement of this requirement. We recognize that the Secretary can properly adopt *per se* rules if he deems them useful in the administration of the program—even rules the application of which may at times yield results that appear unnecessarily harsh. However, there are two important shortcomings in the Department's decision to reject Brick's offer. First, nothing in the Department's regulations themselves indicates that entry cards must be completed in the precise manner specified by the instructions on the card.[8] Nor do the cases cited by the Secretary in which entry cards were rejected because they were improperly completed address this issue. These cases all involved cards which omitted information required by the cards. *See, e. g., Sorensen v. Andrus*, 456 F.Supp. 499 (D.Wyo.1978) (incomplete date, no day of the month); *Grace M. Williams*, 26 IBLA 232 (1976) (return address omitted). Second, where the Secretary chooses to apply a *per se* rule, it is essential that the rule be applied consistently, particularly when the Secretary claims that one reason for adopting the rule is to eliminate any need for discretionary decisions by BLM employees who administer the program. It appears that the Secretary has, in at least one instance, not considered the failure of the offeror to enter his name in the order specified by the entry card—last name, first name, middle initial—to be a fatal defect. In *Winkler v. Andrus*, 594 F.2d 775 (10th Cir. 1979), the Tenth Circuit reversed an IBLA decision rejecting a winning entry card which had been stamped "J. A. Winkler Agency."[9] What is significant for the purposes of the case at bar is that in *Winkler* neither the BLM nor the IBLA considered the offeror's failure to enter his name in the proper order to be reason for disqualifying his offer.[10]

This court has previously held that the Secretary is bound to treat all violators of this regulation alike and may not depart in a single case from an otherwise consistent policy of rejecting applications which do not conform to the regulations simply by saying the violation is unimportant. *McKay v.*

**7.** *See* 30 U.S.C. § 184(d) (1976). The Secretary also rejects appellant's claim that the Department waived its right to determine the validity of his entry card by accepting it for the drawing.

**8.** The regulation involved merely states:
§ 3112.2–1   **Offer to lease.**
   (a) *Entry Card.* Offers to lease such designated leasing units by parcel numbers must be submitted on a form approved by the Director, "Simultaneous Oil and Gas Entry Card" signed and fully executed by the applicant or his duly authorized agent in his behalf. The entry card will constitute the applicant's offer to lease the numbered leasing unit by participating in the drawing to determine the successful drawee.
43 C.F.R. § 3112.2–1(a) (1979). The Secretary interprets the provision that entry cards be "signed and fully executed" as requiring strict compliance with the instructions on the cards. While this phrase may be reasonably construed as requiring responses to all information blanks on the entry card, as IBLA decisions have done, we do not find it immediately obvious that the phrase can be interpreted in a fashion which mandates the decision reached by the IBLA in this case—that the Department may reject entry cards which contain all the required information simply because the offeror's name is not entered in the proper order.

**9.** The IBLA had ruled that the term "Agency" suggested a corporate offeror rather than an offer by an individual and that, therefore, the offer was ambiguous. The Tenth Circuit held that the IBLA decision was arbitrary and capricious.

**10.** In fact, the Secretary admits in his brief in the instant case that the issue of the order of the offeror's name was not even raised in *Winkler*. *See* brief for appellee at 11 n. 5.

*Wahlenmaier*, 226 F.2d 35, 43 (D.C.Cir. 1955). By the same token, where the Secretary has not in the past consistently disqualified entry cards which do not strictly comply with a particular instruction on the entry card, he may not now disqualify an offer solely on the ground that it did not comply with that instruction. Not only does such inconsistency in enforcing the rule revive the same discretionary decision-making that the *per se* rule supposedly eliminated, it also raises questions about whether the participants in the program are given notice about the requirements they must meet in order to be eligible. This notice issue is particularly important where, as here, nothing in the Department's regulations themselves suggests that offerors who fail to complete the entry cards in the precise manner indicated by the cards will be disqualified. The Secretary may, of course, hereafter insist that all entry cards in which the offeror's name is not entered in the proper order will be disqualified. But he must give participants in the leasing program notice of his intention to strictly enforce this requirement and, in addition, ensure that this rule is consistently applied.

In the circumstances presented by this case we are forced to conclude that the Secretary's decision to disqualify Brick's offer was arbitrary and capricious. Accordingly, we reverse the judgment of the District Court and remand the case to that court for remand to the Secretary with instructions to reinstate Brick's offer to lease Parcel WY–76.

*So ordered.*