Alvin B. GENDELMAN, Plaintiff,

v.

James G. WATT, Defendant.

Civ. A. No. 82–3693.

United States District Court,
District of Columbia.

Aug. 28, 1984.

James W. McDade, Jason R. Warran, McDade & Lee, Washington, D.C., for plaintiff.

Charles W. Findlay, III, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

This matter comes before the Court on the parties' cross motions for summary judgment. The issue presented is whether the action of the defendant, the Secretary of the Interior ("Secretary"), in rejecting the plaintiff's application for a mineral lease was arbitrary and capricious. For the reasons set forth below, the Court determines that the Secretary's action was not arbitrary and capricious, and grants summary judgment in favor of the defendant.

## FACTUAL BACKGROUND

Although the parties concede that this case involves no disputed issues of fact, a short description of the mineral lease program is a useful prelude to understanding the plaintiff's arguments about the mineral lease in question. In May, 1981, the plaintiff, Alvin B. Gendelman applied for a mineral lease for land located in Montana, under a program administered by the Department of the Interior ("Department"). This program allows individuals and other entities to file lease applications for government land which is located outside of any known oil or gas producing field. Mineral Lands Leasing Act of 1920 ("Act"), 30 U.S.C. § 226 *et seq.* Under this "simultaneous filing" system, the Department, through state offices of the Bureau of Land Management ("BLM"), publishes a bi-monthly list of available parcels of land, announces a filing deadline for applications, and uses a lottery to select a priority applicant from the list of applicants who have timely filed applications. This applicant must comply with certain express regulatory requirements in order to finally obtain approval for the lease. 43 C.F.R. § 3112.5–1(b). If the priority applicant fails to satisfy these requirements, an alternative applicant whose application complies with these requirements is selected. 43 C.F.R. § 3112.4–1.

In this case, the plaintiff's application was submitted by a filing service. Lease filing services are commonly employed by individuals to file numerous applications in their behalf for different tracts of available land in the mineral leasing program. When a lease filing service submits an application on behalf of an individual, the service must show that it has current authority to serve as an agent with respect to that application. At the time the plaintiff submitted his application, the agency authority requirement could be satisfied in one of three ways. First, the applicant could submit a personal statement or copy of the contract which created the agency relationship with each lease application. 43 C.F.R. § 3102.2–6(a). Second, the agent could file a single copy of its standard form contract and a list of the lease applicants who were parties to the contract. These two documents were to be filed within 15 days of the application, and the list had to include the names and addresses of each applicant. 43 C.F.R. § 3102.2–6(b). Third, the filing service could request BLM to maintain a file which contained a statement or contract describing the agency relationship with one or more clients. BLM then assigned a serial number to the file, and the agent could then include that serial number on each lease application filed on behalf of the named clients. In order for an applicant to utilize this reference system, the BLM file had to contain a current statement of the agency relationship. 43 C.F.R. § 3102.2–1(c).

On July 14, 1980, the plaintiff executed a standard-form contract with two filing services, Stewart Capital Corporation ("Stewart") and Melbourne Concept Inc. ("Melbourne"), which gave the two services authority to file lease applications on behalf of the plaintiff. The contract was for the first bimonthly filing period, but Paragraph 13 of the contract provided for renewals for subsequent filing periods. Annex C to the contract provided that these renewals were to be "on all the same terms, conditions and representations as set forth in the previous filing service agreement."

A copy of this contract was submitted to the Colorado State Office of BLM on July

22, 1980, and assigned the serial number C 20340. Renewal forms for the September 1980, November 1980, and January 1981 filing periods were also submitted to the Colorado office, but a renewal form for the May 1981 filing period was not submitted. Nevertheless, Stewart filed an application on Gendelman's behalf for parcel MT 182 during the May 1981 filing period. The application referenced serial number C 20340, and was drawn with first priority. At the close of the May 1981 filing period, Stewart supplemented the BLM file with a list of clients who had filed pursuant to previously-filed contracts. This list included Gendelman's name. On August 10, 1981, these materials were supplemented by the submission of a copy of an Annex C which renewed the original contract. At this point, the May 1981 filing period was closed.

In a decision dated February 11, 1982, the Montana State Office of BLM rejected Gendelman's lease application for the reason that it did not comply with either of the three alternatives for substantiating Stewart's authority to act on Gendelman's behalf. The Interior Board of Land Appeals ("Board") affirmed the Montana decision as modified. 67 IBLA 333 (Oct. 1, 1982). The Board found that Gendelman had not complied with section 3102.2–6(b), 67 IBLA 336, and that the reference file did not satisfy the requirements of section 3102.2–1(c) because "there was no updated authorization in the file for Stewart to act for [Gendelman] in the May 1981 drawing." Id. at 337.[1] The Board also rejected Gendelman's argument that the lease should issue because the Montana State Office had previously approved a lease application which contained deficiencies similar to those in Gendelman's application. The Board noted that although BLM's action in a "prior situation" may have been inconsistent,

BLM's interpretation of the regulations in this case was nevertheless proper. Id. at 339.

## LEGAL ANALYSIS

Courts have consistently applied the arbitrary and capricious standard of review to the Secretary's rejections of noncompetitive oil and gas leases. See, e.g., Brick v. Andrus, 628 F.2d 213, 214 (D.C.Cir.1980). In this case, the arbitrary and capricious standard governs the crux of the dispute between the parties: whether the Secretary's strict interpretation of the applicable regulations, as applied to Mr. Gendelman, was reasonable. The plaintiff's argument that his application met the technical requirements of the regulations was fully argued at the administrative level, and properly rejected by both BLM and the Board. Thus, the issue for the Court's consideration is whether Gendelman's compliance with the regulations, while concededly imperfect, was not so imperfect that his application should have been rejected.

In this circuit, the Secretary may strictly enforce the application requirements of the simultaneous filing system, and may reject applications which do not fully comply with the per se requirements of the regulations. Brick v. Andrus, 628 F.2d at 216.[2] The Secretary, however, may not demand strict compliance if the rules do not properly notify the applicants of applicable requirements, or if these rules are not consistently applied. Id.

■ In this case, the Secretary's interpretation of the regulations, while strict, was not improper, and the administrative flaws noted in the Brick analysis were not present here. The regulations were not ambiguous, and they properly put applicants on notice of the requirements for

1. In the administrative proceedings, Gendelman conceded that Stewart had not complied with the first alternative, section 3102.2–6(a).

2. The plaintiff points to recent case law in the Tenth Circuit in which courts have reversed denials of mineral leases which were based on technical, nonsubstantive defects in the lease

applications. See, e.g., Conway v. Watt, 717 F.2d 512, 516 (10th Cir.1983). This principle, however, has not been applied in this circuit, where the Brick standard is still the governing rule. See Alexander v. Watt, No. 82–231, slip op. at 11 (D.D.C. May 15, 1984) (consolidated action).

showing agency qualification. Section 3102.2–1(c) stated that a "serial number shall not be used if the statement on file is not current," and the preamble to the final BLM rulemaking rejected:

comments [which] suggested that the requirement of the proposed rulemaking that all statements of qualifications be kept current was too great a burden to place on an applicant....No application or offer will be accepted unless the statements of qualifications are fully up to date....

45 Fed.Reg. 35,157 (May 23, 1980).

The materials in Gendelman's BLM file did not satisfy the requirements of the regulations. The expired contract did not inform BLM that Stewart was currently qualified to file applications on behalf of Gendelman. The fact that Stewart subsequently filed a list of clients, including the plaintiff, on whose behalf it was submitting applications during the May filing period did not alter the fact that the contract on file was not current, nor did this list satisfy the requirements of section 3102.2–6(b). Thus, the Secretary properly required strict compliance with the agency qualification regulations, and the decision to deny the plaintiff's application for noncompliance was not arbitrary and capricious.

■ The plaintiff also alleges that the Secretary's interpretation of the regulations requiring proof of current qualifications was inconsistent. At the administrative level, the plaintiff argued that the BLM office approved a lease application filed by Stewart on behalf of a second client, Andrew Gagarin, under circumstances similar to those present here. The Board, without determining whether the circumstances of the Gagarin case were similar to the circumstances of the Gendelman case, found that any similarity would not, in any event, require approval of Mr. Gendelman's application.

The record does not demonstrate that the Secretary's interpretation of section 3102.-2–1(c) was inconsistent. The Board properly rejected Mr. Gendelman's application because neither the administrative record, *see* Record at 20–21, 33–36, nor the supplementary materials submitted by the plaintiff, *see* Plaintiff's Exhibit G,[3] suggest that the two applications were identical. The contract between the parties in the Gagarin case was automatically extended by the terms of the contract, and the agency contract file with BLM was therefore current. Thus, BLM's rejection of Mr. Gendelman's application was not inconsistent with its approval of the Gagarin application, and the Secretary's interpretation of the regulations was not arbitrary and capricious.

■ Finally, the fact that recent amendments to the Department's regulations have modified the proof of agency requirements, *see* 47 Fed.Reg. 8544 (1982), does not mandate a different result in this case. The amendments became effective one year after the May 1981 filing period which is the subject of this lawsuit, and were not intended to be applied retroactively. *Id.* At the time Mr. Gendelman submitted his application, the Secretary had not determined that the agency qualification requirements should be liberalized, and the decision denying the lease application was not arbitrary and capricious under the governing law.

In addition, the amendments did not reflect a change in the agency's view of the purpose of the agency qualification requirement. The BLM summary preceding the

---

**3.** The administrative record and Exhibit G, attached to Plaintiff's Statement of Material Facts, were filed on August 9, 1983. Under most circumstances, the Court may not consider materials outside of the administrative record in determining whether agency findings are arbitrary and capricious. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971). Here, the Court only considers the supplementary material submitted by the plaintiff to aid its determination that remand to the agency for further consideration of the Gagarin case is unnecessary. The plaintiffs had ample opportunity to present information on the Gagarin case in the administrative proceedings below, and the additional material submitted by the plaintiff does not in any event support his argument that the BLM decision was inconsistent.

final rulemaking suggested that the size of the noncompetitive oil and gas leasing program meant that the qualifications documents could no longer be effectively and cheaply processed. Therefore, BLM concluded that agents could certify their compliance with the agency qualifications requirements by submitting the lease applications. *Id.;* 43 C.F.R. § 3102.5. The rulemaking did not suggest that the purpose of the agency qualification requirements—to prevent fraud and improper agency relationships—had been superseded in any way. 45 Fed.Reg. 35, 157 (1980).

## CONCLUSION

Based on the foregoing analysis, the Court concludes that the administrative decision which rejected the plaintiff's lease application was not arbitrary and capricious. An appropriate Order accompanies this Memorandum Opinion.