Brady R. JUSTICE, et al., Plaintiffs,

v.

Richard LYNG, Secretary, United States Department of Agriculture, Defendant.

No. CIV 87–1569 PHX WPC

United States District Court,
D. Arizona.

April 28, 1989.

On Motion for Clarification
June 23, 1989.

Jack E. Brown, Phoenix, Ariz., Alan R. Malasky, Washington, D.C., and Bruce E. Smith, Indianapolis, Ind., for plaintiffs.

Michael A. Johns, Asst. U.S. Atty., Phoenix, Ariz., for defendant.

## MEMORANDUM AND ORDER

COPPLE, Senior District Judge.

The Plaintiffs in this case are: Brady R. Justice, Franklin L. Jackson, Ethan Jackson, Si Brooke, Arlis Priest, and The Franklin Jackson Trust, (all general partners of and doing business as Red Mountain Farming Company, collectively referred to as the "Farming Company"), Edward Borger, Jr., Robert Rush, Leon Conner, Lee Roy Dickson, Michael Duncan, Mark Jackson, Jody Gregg, Shelly Todd, Blake Jackson, Wessley Jackson, Ronald Hicks, Barry Hicks, Kimberly Hicks, David Justice, Michael Justice, Kathryn Justice, Lori Blankenship, Lloyd Jackson, Lynn Jackson, Richard Rogers, Red Mountain Farming Company and William Chance, (all general partners of and doing business as Red Mountain Farms Management Company, collectively referred to as the "Management Company"), and Joe L. Scott, Robert Lorber, Robert West and Gene Minorro, (all general partners of and doing business as Aztec Partnership, collectively referred to as "Aztec"). The Plaintiffs filed their complaint for review of the final determination by the Agricultural Stabilization and Conservation Service ("ASCS"). Defendant Lyng, as Secretary of the United States Department of Agriculture is the official ultimately responsible for administering all regulations relevant to this case.

Defendant Lyng filed a Motion for Summary Judgment, to which the Plaintiffs responded. Plaintiffs also filed a Cross-Motion for Summary Judgment, however, Lyng failed to respond within the requisite time period. Lyng later filed a motion for leave to file a late pleading, to which the Plaintiffs objected. Pursuant to Local Rule 11(i), the Plaintiffs moved for Summary Judgment in their favor. The Court reviewed all of the parties' pleadings and heard argument on the pending motions. The Court now rules on the: (1) Defendant's Motion for Summary Judgment; (2) Plaintiffs' Cross-Motion for Summary Judgment; (3) Defendant's Motion for Leave to File a Late Pleading; (4) Plaintiffs' Motion for Summary Judgment pursuant to Local Rule 11(i); (5) Plaintiffs' Motion to Preclude Defendant from Filing a Reply in Support of the Motion for Summary Judgment; and (6) Defendant's Motion for Leave to File Memorandum in Excess of 15 pages.

### I. *Factual Background*

The Plaintiffs raise cotton, wheat and feed grains on the farms they own. In

1984, the Farming Company owned and operated a farm consisting of approximately 6,910 acres of land in Yuma County. The Farming Company expanded the crop acreage to 10,215 acres between 1984 and 1985. *See* Plaintiffs' Statement of Facts in Support of Cross–Motion and in Opposition to Motion for Summary Judgment (("Ps' Facts"), ¶¶ 16, 17). As a result of this expansion, the Management Company was formed to farm the land pursuant to a farming agreement reached with the Farming Company. Under this agreement, the Farming Company contributed the land and the taxes while the Management Company contributed management services, equipment and certain expenses. Any remaining expenses were shared by the two companies. (Ps' Facts, ¶ 18).

The Agricultural Act of 1949 ("Act"), as amended, authorizes the Department of Agriculture to make direct income support payments to farmers under annual commodity and acreage reduction programs for cotton, wheat and feed grains. These payments are made under two separate programs: (1) deficiency payments pay farmers the difference between the government-established target price for a commodity and the higher of the commodity average market price or its loan rate; and (2) land diversion payments are paid to farmers who agree to take a percentage of their acreage out of production for the commodities they would have grown on idled acres. (Ps' Facts, ¶ 4). Title 7, U.S.C.A. § 1421 *et seq.* (1988). In connection with these programs, the Food Security Act of 1985 provides that a *person* shall be entitled to receive payments under the program, not in excess of $50,000. (Ps' Facts, ¶ 5). Title 7 U.S.C.A. § 1307 (Supp. III 1985) (emphasis supplied).

## A. *The 1985 Program Year*

In 1983 and 1984 the Farming Company received seven "person" determinations or program payments under the Act. Each of the general partners was deemed to be a "person" for purposes of receiving this subsidy. (Ps' Facts, ¶ 16). In June, 1985, the Arizona State ASCS Office held that the Farming Company was entitled to its seven "person" determination for the 1985 program year. In addition, the State ASCS Office held that the Management Company was eligible for eight "person" determinations, however, the remaining 14 general partners "were not directly involved with the farm [and were] making very little contribution to the partnership." (Ps' Facts, ¶ 19). These fourteen partners appealed this decision and the State ASCS then withdrew all payments to the Management Company, finding that none of the general partners were separate persons for purposes of the payment limitation. ASCS held that recent guidelines required a finding that no substantive change had occurred in the farming operation and, therefore, the partners did not qualify as separate person. (Ps' Facts, ¶ 20). The Management Company then appealed the State ASCS's determination to the ASCS Deputy Administrator for State and County Operations ("DASCO"). DASCO held that a substantive change in the farming operations had occurred, however, the contributions of the partners were not commensurate with the claimed shares of profit and loss. The DASCO opinion affirmed the original 7–person determination for the Farming Company, but held that none of the Management Company partners were entitled to "person" determinations for purposes of payment under the Act. DASCO's opinion was rendered on April 1, 1986. This opinion was appealed and DASCO later ruled that eight of the twenty-two partners were entitled to "person" determinations due to the fact that the earlier opinion was rendered on the same date as the eligibility cut-off date for payments under the program. (Ps' Facts, ¶ 22). After the April 1, 1986 opinion was rendered, the Management Company partners made additional capital contributions. (Ps' Facts, ¶ 23).

## B. *The 1986 Program Year*

Aztec was formed in 1986 by its four general partners. Aztec leased land from the Farming Company and entered into a farming agreement with the Management Company. Under this agreement, Aztec

contributed all of the property to be farmed and the taxes. The Management Company contributed management services, equipment and certain expenses. All remaining expenses and income were shared equally by Aztec and the Management Company. (Ps' Facts, ¶ 24).

The State ASCS Committee found that the Management Company was entitled to twenty-two separate person determinations for the 1986 program year due to the substantive changes made in the operation. However, the State ASCS requested guidance from DASCO on the relationship and "person" determinations of Aztec. This request was based on a provision in the farming agreement between Aztec and the Management Company which deemed that the shared cost of $130.00 per acre, per year, would account for the Management Company's labor and tillage. (Ps' Facts, ¶¶ 25, 26). DASCO rendered the opinion that all partners of the Management Company and Aztec were one "person" for purposes of the payment program. DASCO also held that the farming agreement between Aztec and the Management Company was a "custom farming agreement" and that the Management Company planned to obtain financing for the production of the crops. (Ps' Facts, ¶ 27). This opinion was reaffirmed by DASCO, despite Plaintiffs arguments that the agreement was not a custom farming agreement, Aztec made substantial contributions under the farming agreement and the separate person status of the Management Company should not be disturbed, even if the agreement met the requirements of a custom farming agreement. (Ps' Facts, ¶¶ 28, 29). DASCO's reaffirmation of the "one-person" payment limitation was based on a finding that the terms of the Aztec/Management Company farming agreement setting labor and tillage costs at $130.00 per acre, per year, satisfied the "custom farming" definition of 7 C.F.R. Part 795.16, and warranted the one-person payment limitation. (Ps' Facts ¶ 30), (Revised Administrative Record "Record", pages 356–358).

DASCO also found that the separate person determinations of all three partnerships must be combined for the 1986 program year due to the financial relationships between them. DASCO relied upon evidence that the Management Company both arranged and signed for operating funds needed by all three partnerships. (Record, page 357). DASCO also held that the partners' additional capital contributions made after the April 1, 1986 date were not considered in its determination as they were untimely. Further, DASCO held that even if these contributions were considered in the determination, a bank notation indicated the loans were made for "operating expenses". This notation rendered the loans jointly guaranteed by the three partnerships. (Record, page 358).

The partners appealed this decision and a hearing was held. DASCO later denied the appeal. Reconsideration was requested by the Plaintiffs on the basis that DASCO: (1) failed to address expert testimony on the custom farming agreement; (2) ignored its own regulations regarding the definition of a custom farming agreement; (3) ignored information from the State Committee and erroneously applied its own regulation regarding the nature of the partners' arrangements; (4) ignored sworn evidence completely contrary to its findings; and (5) applied its decision inequitably by refusing to consider the substantial contributions made after the April 1, 1986 deadline.

## II. Applicable Statutes and Regulations

The Plaintiffs were eligible to receive deficiency payments for their cotton, wheat and grain crops based on contracts signed by them to reduce the amount of land devoted to these crops. See Defendant's Motion for Summary Judgment, page 2. An incorporated term of these contracts was the payment limitation regulation found in the Food Security Act of 1985, Pub.L. No. 99–198, § 1001 (1985) which placed a limit of $50,000 on any payments due to a person under the program. Congress placed the duty of defining "person" upon the Secretary and ordered that regulations should be issued regarding this defi-

nition. 7 U.S.C.A. § 1308(5)(A) (1988)[1]. The following regulations pertain to the separate person determination and the definition of a custom farming agreement.

### § 795.3 Definitions

\* \* \* \* \* \*

(b)(1) Subject to the provisions of this part, the term "person" shall mean an individual, joint stock company, corporation, association, trust estate, or other legal entity. In order to be considered to be a separate person for the purposes of this part with respect to any crop, in addition to any other provision of this part, an individual or other legal entity must:

(i) Have a separate and distinct interest in the crop or the land on which the crop is produced;

(ii) Exercise separate responsibility for such interest; and

(iii) Be responsible for payment of the cost of farming related to such interest from a fund or account separate from that of any other individual or entity.

\* \* \* \* \* \*

Agricultural Stabilization Guidelines, 7 C.F.R. § 795.3 (1988).

### § 795.6 Multiple individuals or other entities

The rules in §§ 795.6 through 795.16 shall be used to determine whether certain multiple individuals are to be treated as one person or as separate persons for the purpose of applying the limitation. In cases in which more than one rule would appear to be applicable, the rule which is the most restrictive on the number of persons shall apply.

Agricultural Stabilization Guidelines, 7 C.F.R. § 795.6 (1988).

### § 795.7 Entities or joint operations not considered as a person

A partnership, joint venture, tenants-in-common, or joint tenants shall not be considered as a person but, notwithstanding the provisions of § 795.3, each individual or other legal entity who shares in the proceeds derived from farming by such joint operations shall be considered a separate person, except as otherwise provided in this part, and shall be listed as a producer for payment purposes on program documents.

\* \* \* \* \* \*

Notwithstanding the foregoing, each individual who shares in the proceeds derived from farming by such joint operation shall not be considered as a separate person unless the individual or other legal entity is actively engaged in the farming operations of the partnership or other joint operation. An individual or other legal entity shall be considered as actively engaged in the farming operation only if its contribution to the joint operation is commensurate with its share in the proceeds derived from farming by such joint operation. Members of the partnership or joint venture must furnish satisfactory evidence that their contributions of land, labor, management equipment, or capital to the joint operation are commensurate with their claimed shares of the proceeds. A capital contribution may be a direct out-of-pocket input of a specified sum or an account borrowed by the individual. If the contribution consists substantially of capital, such capital must have been contributed directly to the joint operation by the individual or other legal entity and not acquired as a result of (a) a loan made to the joint operation, (b) a loan which was made to such individual or other legal entity by the joint operation or any of its members or related entities, or (c) a loan made to such individual or other legal entity which was guaranteed by the joint operation of any of its members or related entities.

Agricultural Stabilization Guidelines, 7 C.F.R. § 795.7 (1988).

### 795.16 Custom Farming

(a) Custom farming is the performance of services on a farm such as land preparation, seeding, cultivating, applying pes-

---

**1.** The current provisions of § 1308 apply to the 1986 crops. 7 U.S.C.A. § 1308 (Supp.1985). A similar limitation applied under § 1308 for the 1983–1985 crops. *Esch v. Lyng,* 665 F.Supp. 6, 8 n. 1 (D.D.C.1987).

ticides, and harvesting for hire with remuneration on a unit of work basis, except that, for the purpose of applying the provisions of this section, the harvesting of crops and the application of agricultural chemicals by firms regularly engaged in such businesses shall not be regarded as custom farming.

\* \* \* \* \* \*

Agricultural Stabilization Guidelines, 7 C.F.R. § 795.16 (1988).

### III. *Jurisdiction*

The matter is properly before this Court pursuant to Title 28 U.S.C. § 1331, Title 28 U.S.C. § 1337 and Title 28 U.S.C. § 2201. The sovereign immunity of the Defendant is waived by the Administrative Procedure Act, Title 5 U.S.C. § 702. Venue is proper pursuant to Title 28 U.S.C. § 1391(e).

### IV. *Standard of Review*

■ The parties disagree on the scope of this Court's review of the Secretary's decision. The Court must review this decision to determine whether it was arbitrary or capricious, "based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). The Ninth Circuit has recently reiterated that an agency's decision need only be reasonable, not the best decision. However, the decision requires a showing of reasoned analysis, based on a review of the administrative record. *National Wildlife Federation v. Burford,* 871 F.2d 849 (9th Cir.1989).

The Court is limiting its review of this matter to the agency record, finding this adequate under the facts of this case. *See ASARCO v. United States Environmental Protection Agency,* 616 F.2d 1153, 1160 (9th Cir.1980) (Court may go outside record if necessary, and shall consider this evidence relevant to the substantive merits of the matter only for background information or to determine whether the agency considered all relevant factors in its decision).

### V. *Secretary's Determination of Separate Person Status*

■ The Secretary determined that Aztec and the Management Company were not entitled to the claimed twenty-six separate person determinations for the 1986 program year. He held that this decision was based on the farming agreement between the two and the finding that the Management Company was to obtain financing for the production of the crops. (Record, page 63).

Plaintiffs argue that the provisions of 7 C.F.R. § 795.7 exempt them from the "financing" rule contained in 7 C.F.R. § 795.3.[2] Defendant Lyng argues that 7 C.F.R. § 795.7 does not even apply to the facts of this case because the partners have failed to conclusively prove their status as joint-venturers. Lyng argues that 7 C.F.R. § 795.3 requires the finding that Aztec and the Management Company are one person for purposes of the 1986 program year.

In making this determination, the Secretary failed to consider the information supplied by the Arizona State ASCS office. In a memorandum sent by the State office, the parties' arrangement was held to be in the nature of a joint venture arrangement. (Record, page 54–55).

The Secretary also held that even if the Plaintiffs were considered joint-venturers, the failure of the parties to inform ASCS of operating plans before the April 1, 1986 deadline precluded them from being considered under the program. However, the parties were not informed of the deficiencies in their 1985 arrangements until the very day of the 1986 program application deadline. On April 1, 1986, both Aztec and the Management Company filed operating plans for the 1986 program year. (Record, pages 48–52). The untimely decision by DASCO resulted in the finding that any efforts taken by the parties on or after that

---

**2.** The Regulation specifies, in part, that: "In order to be considered to be a separate person ... an individual or other legal entity must ...

(iii) Be responsible for payment of the cost of farming separate from that of any other individual or entity."

date would not be considered for the 1986 program year. DASCO later changed its position and held that eight of the twenty-two Management Company partners would be given separate person status, even though substantial contributions were made after the deadline.

This change in position, followed by a later determination that actions after April 1, 1986 would be irrelevant, provide support for holding that the Secretary's decision regarding the joint venture arrangement of Aztec and the Management Company was arbitrary. Because the underlying reason for holding the parties to a single person determination under the financing rule of 7 C.F.R. § 795.3 was error, the parties satisfy the requirements of 7 C.F.R. § 795.7.

The Secretary also held that the capital contributions made by the partners were actually operating loans as evidenced by notations made on bank loan documents. This decision, however, completely ignored the sworn affidavit and letter submitted by an officer of the loaning bank. These documents stated that the notation indicating that the loans were made for "operating expenses" was a clerical error and, in fact, the loans were made solely for capital contribution purposes. (Record, pages 58–60, 413). The Secretary was not free to ignore this affidavit and letter in making his determination. Therefore, his finding that the partners had not made capital contributions is not supported by the record. *American Tunaboat Ass'n v. Baldrige*, 738 F.2d 1013 (9th Cir.1984).

The Secretary also stated that the partners' shares were not commensurate with the claimed shares of profit and loss. This decision is without support and fails to account for the parties' own testimony and documentation that substantial contributions were made by all of the twenty-two Management Company partners. (Record, pages 181–207). Further, the Secretary held that these additional capital contributions would not be considered as they were made after the April 1, 1986 program determination deadline. This decision directly contradicts a previous determination to

grant eight of the twenty-two partners interim relief, despite late payments. (Record, page 177). These two conflicting stances regarding whether to consider late payments, support a finding that the decision to disregard late payments as capital contributions, was arbitrary and capricious. *Graphic Communications Int'l Union, Local 554 v. Salem–Gravure Division of World Color Press, Inc.*, 843 F.2d 1490, 1493 (D.C.Cir.1988), *cert. den.* —— U.S. ——, 109 S.Ct. 1119, 103 L.Ed.2d 182 (1989).

In light of the above discussion, as well as: (1) the Secretary's decision for the 1985 year which granted separate person status to each of the Farming Company general partners; and, (2) the decision for the 1987 Program year, which granted separate person status to each Farming and Management Company partners, the Secretary's decision denying separate person status for the 1986 program year is unsupported by the record and a clear departure from its prior and subsequent decisions. *INS v. Cardoza–Fonseca*, 480 U.S. 421, 446, 107 S.Ct. 1207, 1220, 94 L.Ed.2d 434 (1987).

VI. *Secretary's Decision Regarding the Farming Agreement*

■ The Secretary determined that the farming agreement between Aztec and the Management Company constituted a "custom farming agreement" pursuant to 7 C.F.R. § 795.16 and that the Farming Company and Aztec were financially tied. This decision was based on the determination that a provision within the farming agreement met the "for hire with remuneration" standard of the regulation.

The Aztec/Management Company farming agreement provided that all of the labor and tillage necessary to maintain the crops would be done by the Management Company's employees and were deemed to cost $130.00 per acre, per year. This cost was to be shared equally by Aztec and the Management Company. (Record, page 93). This farming agreement, with the exception of the designation of the deemed costs, is identical to the agreement reached between the Farming Company and the

Management Company. However, the Secretary determined that this slight difference in language would support a finding that the agreement met the definition of a custom farming agreement and required that Aztec and the Management Company be considered one "person" for the payment limitation.

The decision that the "deemed costs" provision rendered the agreement was a custom farming agreement clearly ignores the expert testimony presented. *See* (Record, pages 124–128) ("[A] custom farming arrangement is set so that the person rendering the custom services takes no risk on the profit. This [Agreement] very definitely sets forth, and is part of that Paragraph 7, which says that the shared expenses such that if there is (sic) no proceeds earned by the crop for that year, then there would be no expenses or nothing to be paid for that.")

Further, the Secretary's determination that the agreement constituted a custom farming arrangement was in direct contradiction to the language of the regulation. *National Medical Enterprises v. Bowen*, 851 F.2d 291, 293 (9th Cir.1988). The regulation provides that a farming agreement shall be considered a custom farming agreement if a person performing work is paid on a unit of work basis. 7 C.F.R. § 795.16(a). In the agreement reached between Aztec and the Management Company, the parties specified that the expenses shall be shared equally between them. A logical extension of this provision requires a finding that neither party would receive any proceeds unless the proceeds exceeded the deemed costs of $130.00 per acre.

In addition to the above, the Court reviewed the agency's actions taken on prior occasions in dealings with these same parties. In the farming agreement reached between the Farming Company and the Management Company, the parties agreed to equally share the expenses of labor and tillage. In fact, with the exception of the "deemed costs" provision, the language of the agreements relating to this matter are identical. The Secretary did not determine that the Farming/Management agreement was a custom farming agreement.

Lyng also argues that Aztec's late lease payments to the Farming Company constituted a financing arrangement between Aztec and the Farming Company. This decision is without support in the regulations. In addition, this decision wholly ignores the substantial contributions made by Aztec to the operation.

Based on: (1) the testimony presented at the administrative level; (2) the language of the regulation relating to custom farming; and, (3) the agency's determination regarding the separate person determinations under the Farming Company/Management Company farming agreement, this Court finds that the Secretary's determination that the Aztec/Management farming agreement was a custom farming agreement is unsupported by the record and both arbitrary and capricious.

VII. *Remand to the Secretary*

The parties disagree on the available remedy that follows upon a grant of Summary Judgment to the Plaintiffs. Lyng argues that a grant of Summary Judgment to the Plaintiffs will only result in remand to the Secretary for further fact-finding. The Plaintiffs argue that upon remand the Secretary would be required to conduct "further administrative proceedings consistent with the holding that the decision below was arbitrary and capricious." Plaintiff's Reply in Support of Motion for Summary Judgment, page 7, n. 1. This Court may remand the case to the Secretary to: (1) redetermine the "separate person" eligibility of the Aztec, Farming and Management Company general partners; and, (2) to reevaluate the farming agreements between the partnerships, in a manner consistent with this Order. *Esch v. Lyng*, 665 F.Supp. 6, 23 (D.D.C.1987).

VIII. *Collateral Motions Relating to Late Pleadings*

Defendant Lyng failed to respond to the Plaintiffs' Cross–Motion for Summary Judgment within the requisite time period. He subsequently filed a Motion for Leave

to File a Late Pleading and the Plaintiffs filed a Motion for Summary Judgment pursuant to Local Rule 11(i). Local Rule 11(i) provides that failure to file a responsive pleading within the requisite time period constitutes consent. However, it is within the discretion of the Court to waive that consent after a review of the pleadings and the circumstances of its filing. *United States v. Warren*, 601 F.2d 471 (9th Cir. 1979). For purposes of deciding the Motion and Cross–Motion for Summary Judgment, the Court waives the consent supplied by Lyng's failure to timely respond to the Plaintiffs' Cross–Motion for Summary Judgment. Lyng's late filings have been considered.

Consistent with the foregoing,

IT IS ORDERED:

1. Defendant's Motion for Leave to File a Late Pleading is Granted.

2. Defendant's Motion for Leave to File Memorandum in Excess of 15 Pages is Granted.

3. Plaintiffs' Motion to Preclude Defendant from Filing a Reply in Support of the Motion for Summary Judgment is Denied.

4. Plaintiffs' Motion for Summary Judgment, pursuant to Local Rule 11(i) is Denied.

5. Defendant's Motion for Summary Judgment is Denied.

6. Plaintiffs' Cross–Motion for Summary Judgment is Granted.

7. The matter is remanded to the Secretary for further administrative proceedings consistent with the holdings of this Court.

ON MOTION FOR CLARIFICATION

Following a telephone conference with and directions from the Court, the Plaintiffs filed a Motion for Clarification of Scope of Proceedings upon Remand. The parties fully briefed their positions and argument was heard.

In the Court's Memorandum and Order of April 26, 1989 ("Order"), the Defendant's determination that the Plaintiffs failed to meet the "separate person" status, was found to be arbitrary and capricious. The Order remanded the case to the Secretary "for further administrative proceedings consistent with the holdings of this Court." Order at 19. The Court stated within the Order that the Secretary must: "(1) redetermine the 'separate person' eligibility of the Aztec, Farming and Management Company general partners; and (2) ... reevaluate the farming agreements between the partnerships, in a manner consistent with this Order." Order at 17.

In the Motion, the Plaintiffs argue that the grant of summary judgment in their favor warrants declaratory relief that each Plaintiff is entitled to "separate person" status for the 1986 program year and the Defendant must enter that relief. *See* Motion at 11. The Defendant's response states that: (1) the Motion for Clarification is a Motion for An Amended Order (a Motion that Court lacks jurisdiction to hear); and (2) the Court lacks jurisdiction to make the requested findings, because the restricted remand would require that the Defendant pay over $1,000,000 to the Plaintiffs.

The following colloquy took place during the telephone conference on May 29, 1989:

> THE COURT: —let me make a suggestion. Rather than argue this off the top of my head, without the benefit of what you're about to cite here
>
> MR. MALASKY: Yes.
>
> THE COURT: —would you please file a motion for reconsideration and clarification, setting forth your position, and give me a chance to look at it with the citations on that specific point?
>
> MR. MALASKY: Yes, Your Honor, we would.
>
> *    *    *    *    *    *

Transcript of Proceedings, attached to Defendant's Reply (sic) to Plaintiffs' Motion for Clarification of Scope of Proceedings upon Remand.

Based upon the telephone conversation that took place, the Court does not agree with the Defendant that the instant motion acts as a Motion for an Amended Order. The Court shall construe the Motion for

Clarification of Scope of Proceedings upon Remand as a Motion for Reconsideration.

Despite Defendant's arguments to the contrary, this Court is entitled to review the Agency's findings and order that they be reversed if found to be arbitrary and capricious. *Esch v. Lyng,* 665 F.Supp. 6, 23 (D.D.C.1987), *modified sub nom. Esch v. Yeutter,* 876 F.2d 976 (D.C.Cir.1989). This Court may review the factual determinations of the Defendant and determine from those whether the Secretary's legal conclusions are arbitrary and capricious. *Gibson v. United States,* 11 Cl.Ct. 6 (1986). This is in fact what the Court held in the Order.

Under the Administrative Procedure Act, 5 U.S.C.A. § 706 (1977), this Court shall:

[D]ecide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall:

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

\* \* \* \* \* \*

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C.A. § 706 (1977).

In this matter, the Court found that the Secretary failed to: (1) consider relevant information supplied by the Arizona State ASCS office regarding the nature of the parties' arrangement (*See* Order at 12); (2) timely inform the parties of the decision denying separate person status so that changes could be made for the following program year (*Id.*); (3) changed positions regarding the status of certain persons while denying the change for others (*Id.*); (4) consider explanatory evidence regarding the nature of certain bank loans, relying instead upon a clerical error (*See* Order at 13); (5) consider the parties' testimony and documentation (*Id.*); (6) consider expert testimony regarding the agreement of the parties (*See* Order at 15); (7) consider the explicit language of the parties' agreement regarding how expenses were to be shared (*See* Order at 16); and (8) support its findings that the parties' agreement constituted a financing arrangement. (*Id.*). All of these factors led the Court to hold that the Secretary's decision was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law.

The issue before the Court at this time is the scope of the remand. The Plaintiffs argue that the Court's Order specifically recognizes that the Agency's determination was incorrect in every respect. They argue that they are entitled to a determination, upon remand, that the general partners are 33 separate persons for purposes of the program. The Secretary argues that the remand is limited and the Agency must now make further findings of fact and conduct further hearings to determine if the parties are in fact entitled to the 33 separate person determinations.

■ This Court may remand to the Agency with explicit instructions. *Donovan v. Adams Steel Erection, Inc.,* 766 F.2d 804 (3rd Cir.1985). Even the cases cited by the Defendant authorize this Court to review the factual findings of the Agency and determine whether in light of these, the legal determination was correct. *Willson v. United States,* 14 Cl.Ct. 300, 304 (1988). The legal determination made by the Agency in this case was not correct and the facts, as stated by the Secretary, are unsupported by the evidence. Therefore, the Secretary's findings were arbitrary and capricious.

The Court is empowered to rule that the Secretary's decision was incorrect and order that the Plaintiffs be awarded their separate person determinations and that the farming agreements are not deemed "custom farming agreements" under the law. 5 U.S.C. § 706; *See Hoska v. U.S. Dept of Army,* 677 F.2d 131, 145 (D.C.Cir. 1982) (Agency determination set aside with instructions to the Army to issue appropri-

ate relief, including "reissuance of petitioner's security clearance, reinstatement, back pay and such other relief as may be warranted".); *Bruck v. Andrus,* 628 F.2d 213 (D.C.Cir.1980) (Action remanded with directions to reinstate the plaintiffs offer as though it were correctly completed); *Wilkett v. ICC,* 710 F.2d 861 (D.C.Cir.1983) (case remanded for the purpose of promptly issuing the requested relief.)

The facts of this case differ from those in the case recently supplied by the Defendant. *Esch v. Yeutter,* 876 F.2d 976 (D.C.Cir.1989). That court ordered remand as the record presently before it did not establish Esch's entitlement to the nine separate person awards requested. The facts before this Court, however, clearly establish the Plaintiffs entitlement and support a determination that the Secretary's decision was arbitrary and capricious in every respect. Had all of the "failures" listed above not occurred, the Secretary would have been required to grant the requested separate person status to all of the thirty-three general partners.

The Court does not find that it lacks jurisdiction to order this relief by virtue of the Tucker Act. Merely serving as a basis for subsequent monetary relief will not divest this Court of jurisdiction. *Laguna Hermosa Corp v. Martin,* 643 F.2d 1376, 1379 (9th Cir.1981). *See* No. 87–1569 PHX WPC, Memorandum and Order, June 14, 1988. This Order merely grants the Plaintiffs the requested Declaratory judgment.

Therefore,

IT IS ORDERED:

1. Plaintiffs' Motion for Clarification of Scope of Proceedings upon Remand, construed by the Court as a Motion for Reconsideration, is Granted.

2. The findings of the Secretary are reversed.

3. The matter is remanded to the Secretary for further proceedings, consistent with this Order, to: (1) revise the findings and find that the general partners of Aztec, Farming and Management Company are "separate persons" for purposes of the 1986 program year; and (2) to revise the findings that the farming agreement between the companies does not constitute a "custom farming agreement".