SATELLITE 8301123, et al., Plaintiffs,

v.

Donald P. HODEL, Secretary of the United States Department of Interior, Defendant.

Civ. A. No. 86–0456.

United States District Court, District of Columbia.

Nov. 21, 1986.

John F. Shepherd, Holland & Hart, Washington, D.C., for plaintiffs.

Charles W. Findlay, U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

JUNE L. GREEN, Senior District Judge.

Plaintiffs seek judicial review of a decision by the Interior Board of Land Appeals ("the Board" or "IBLA"), United States Department of Interior, in *Satellite 8211104, et al.*, 89 IBLA 388 (Nov. 23, 1985). In that decision, the Board affirmed decisions by the New Mexico State Office, Bureau of Land Management ("BLM"), rejecting applications filed by plaintiffs in 1983 for three oil and gas leases on federal lands in New Mexico. Both parties have moved for summary judgment. For the reasons set forth below, the Court grants summary judgment in defendant's favor, affirming the Board's decision.

### Background

There are no material facts in dispute. As authorized by the Mineral Leasing Act of 1920 ("the Leasing Act"), 30 U.S.C. §§ 181 *et seq.*, the Secretary of the Interior ("the Secretary") is charged with the duty of leasing certain federal lands for oil and gas deposits. The leasing of these lands is accomplished either on a competitive bid-

ding basis within any "known geological structure of a producing oil or gas field....", 30 U.S.C. § 226(b), or on a noncompetitive basis to the first qualified applicant where the lands are not within a known geological structure. 30 U.S.C. § 226(c). This case involves applications for noncompetitive leases.

Pursuant to 30 U.S.C. § 189, the Secretary has promulgated regulations governing what is known as a simultaneous oil and gas ("SOG") leasing system for issuing noncompetitive oil or gas leases. 43 C.F.R. Subpart 3112 (1982).[1] Under this system, the BLM posts a bi-monthly list of parcels available for SOG leasing. Persons desiring to lease a particular parcel must file an application for that parcel within fifteen working days after the list is posted. 43 C.F.R. § 3112.1–2. All applications received for a particular parcel within this "filing period" are deemed simultaneously filed. A computerized, random selection is then conducted and three applications are selected for first, second, and third priority. 43 C.F.R. § 3112.3–1. If the first selected applicant is determined to be qualified and his application is otherwise satisfactory, the BLM may issue him an SOG lease. If the first selected application is rejected, the second and third applications are considered in order. *Id.*

Satellite Energy Corporation ("SEC") is a lease filing service which, among other things, forms "pools" of applicants from its clientele to participate in the SOG system. Among the pools formed by SEC are the plaintiffs Satellite 8301123, Satellite 8305121, and Satellite 8303155. Each pool is composed of individual United States citizens who have minimum five percent equity interests in the pool. In addition, the pool members pay SEC a fee for assistance in selecting which parcels to apply for and in completing the lease applications. *See* Administrative Record ("A.R.") at A 27–41.

The articles for each plaintiff pool appoint Mr. Terence R. Corwin, a member

---

1. The regulations discussed in this memorandum are those which were in effect in 1982, when the events relevant to this case occurred.

selected by SEC, to act as each pool's "nominee." As "nominee," Terence Corwin "is authorized to act on behalf of all members with regard to a lease(s) issued to [plaintiffs]; and to act as attorney-in-fact for all members whenever necessary in connection with the [SOG program] or an issued lease(s)." A.R. at 30, 33, 36. Terence Corwin is also the president of SEC and maintains a five percent interest in each of the three pools. Acting in his capacity as president of SEC, Terence Corwin executed the articles of each plaintiff pool. There was no evidence presented to the Board indicating that any other members of the pools executed the articles, and the articles are undated. A.R. at A 30–38.

In January 1983, Terence Corwin, in his capacity as president of SEC, submitted an SOG application for lease parcel NM 213 (lease serial number NM 56398) and paid the required filing fee on behalf of Satellite 8301123. This application was selected with first priority in February 1983, and BLM sent a lease form for NM 56398 to the address listed for Satellite 8031123 on the SOG application: 10 Siracusa Blvd., Smithtown, New York 11787. This lease form was executed by Terence Corwin as nominee of Satellite 8301123 on June 28, 1983, and was returned to the BLM. A.R. at A 15, 54–60.

In March 1983, Michael Corwin, as vice-president of SEC, submitted an SOG application for lease parcel NM 246 (lease serial number NM 56771) and paid the required filing fee on behalf of Satellite 8303155. In April 1983, this application was selected with first priority for lease serial number NM 56771. A.R. at B 11, 29.

In May 1983, Terence Corwin, in his capacity as president of SEC, submitted an SOG application for lease parcel NM 107 (lease serial number NM 57135) on behalf of Satellite 8305121. In June 1983, this application was selected with second priority for lease serial number NM 57135. BLM subsequently rejected the SOG application selected with first priority, thereby elevating the application of Satellite 8305121 to first priority. A.R. at C 49, 97.

The address listed for Satellite 8301123, Satellite 8303155, and Satellite 8305121 on all three of these SOG applications submitted by SEC was the same: 10 Siracusa Blvd. Smithtown, New York 11787. This address was the residence of Terence Corwin. A.R. at A 24. By decisions dated August 29 and September 28, 1983, the New Mexico State Office of the BLM rejected the applications submitted by SEC for lease serial numbers NM 56898, NM 56771, and NM 57135. The basis for these decisions was the BLM's conclusion that the address listed for the individual Satellite applicants "is effectively '... the address of any other person or entity which is in the business of providing assistance to those participating in the simultaneous oil and gas leasing system,' thereby violating Title 43, C.F.R. 3112.2–1(d)." *Satellite 8211104, et al.*, 89 IBLA at 390 (quoting from BLM decisions of August 29 and September 28, 1983).

Satellite 8301123, Satellite 8305121, and Satellite 8303155, through the same counsel, appealed to IBLA. A.R. at A 49–51, C 43–44. By decision dated November 22, 1985, the IBLA affirmed the BLM's rejection of the three applications, finding that each of the Satellite applicants violated the prohibition against using a filing service's address in lieu of the applicant's. 43 C.F.R. § 3112.2–2(d). In addition, the Board determined that the application and executed lease form submitted on behalf of Satellite 8301123 was invalid because the articles for that pool, authorizing Terence Corwin to act as attorney-in-fact in executing SOG lease offers, failed to prohibit him from executing SOG lease offers on behalf of any other participants. 43 C.F.R. § 3112.6–1(b)(1)(i).

*Discussion*

A. *The Standard of Review*

The Court has the power to review agency determinations under Chapter 7 of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 704, 706. Under section 706 of the APA, the Court may set aside an agency action only where it is

shown to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). It is plain that the standard of review is a narrow one and that the Court cannot substitute its own judgment for that of the agency. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). The Court further recognizes that there must be a judicial presumption favoring the validity of administrative action, particularly where the Congress has empowered the agency with considerable discretion. *E.g., Wilderness Public Rights Fund v. Kleppe,* 608 F.2d 1250, 1254 (9th Cir.1979), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980); *Duesing v. Udall,* 350 F.2d 748, 751 (D.C.Cir.1965), *cert. denied,* 383 U.S. 912, 86 S.Ct. 888, 15 L.Ed.2d 667 (1966).

Nonetheless, plaintiffs argue that the issues here involve questions of law and that *de novo* review is therefore appropriate. *De novo* review would be proper only if the issues rested on legal principles "unrelated to the statutes or regulations that the agency regularly interprets." *Lowey v. Watt,* 684 F.2d 957, 965 (D.C.Cir.1982). Such is not the case here.

This case rests entirely on an agency's interpretation of its regulations, *i.e.,* whether plaintiffs violated 43 C.F.R. § 3112.2–1(d) by providing the address of a filing service on their applications; whether one plaintiff pool violated 43 C.F.R. § 3112.6–1(c) by participating in a scheme which gave a party more than one opportunity to obtain an interest in a lease; and whether another pool violated 43 C.F.R. § 3112.4–1(b) by signing a lease offer without proper power of attorney. It is noted at this juncture that plaintiffs do not contest the legality of these regulations.

Essentially, plaintiffs claim that in rejecting their SOG applications, the Board's rigorous interpretation of the applicable regulations was incorrect. When a court reviews IBLA decisions construing strictly SOG application requirements, it is well settled in this Circuit that the arbitrary and capricious standard of review is the proper standard. *See Brick v. Andrus,* 628 F.2d 213, 214 (D.C.Cir.1980); *Gendelman v. Watt,* 593 F.Supp. 859, 861 (D.D.C.1984).

When analyzing a decision under the arbitrary and capricious standard, the Court need only inquire whether the Board's action in rejecting plaintiffs' applications had a rational basis. *Ethyl Corp. v. Environmental Protection Agency,* 541 F.2d 1, 34–35 (D.C.Cir.), *cert. denied,* 426 U.S. 941, 96 S.Ct. 2663, 49 L.Ed.2d 394 (1976); *see also Overton Park v. Volpe,* 401 U.S. at 416, 91 S.Ct. at 823 ("... the ultimate standard of review is a narrow one."). Moreover, the agency's interpretation of its regulations is entitled to great deference when applying the arbitrary and capricious standard. *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–02, 13 L.Ed.2d 616 (1965).

**B. *The IBLA's Decision***

The regulations require that an SOG application provide the personal or business address of the applicant. It states specifically that the address of "any other person or entity" in the business of providing filing services is unacceptable. 43 C.F.R. § 3112.2–1(d). The regulation is intended to reduce the opportunity for an unscrupulous filing service to appropriate a winning application without the applicant's knowledge. *See* "Statement of Policy on Federal Simultaneous Oil and Gas Leasing System," Instruction Memorandum No. 85–545 (July 11, 1985).

Plaintiffs' applications each identified the applicant's address as: 10 Siracusa Blvd., Smithtown, New York 11787. A.R. at A 15, B 11, C 99. The BLM rejected the applications because they determined that the address was effectively the address of SEC, a filing service. *Satellite 8211104, et al.,* 89 IBLA at 390 (quoting BLM decisions of August 29 and September 28, 1983).

In reviewing the BLM's rejection of plaintiffs' applications, the Board requested additional information from plaintiffs to determine "whether the names and ad-

dresses [on the applications] functioned merely as a mail drop for Satellite Energy Corporation as determined by BLM." *Satellite 8211104, et al.*, 89 IBLA at 391–92; A.R. at A 43. In return, the IBLA received copies of the articles of each pool and a statement of Terence Corwin, president of SEC. The statement indicated that the address provided on each SOG application was Terence Corwin's residence. The statement also explained a role switching routine whereby Terence Corwin alternated between nominee of the various pools "in the evening hours and on weekends" and the president of SEC during regular business hours. A.R. at A 24–25.

While these facts alone appear to support a rejection of plaintiffs' applications under 43 C.F.R. § 3112.2–(d), the IBLA probed deeper. *See* 44 Fed.Reg. 56176 (1979) (indicating Secretary's concern with filing system abuses). In an effort "to determine whether the applicants were 'separate entities' as they maintain", the Board went on to ascertain whether the Satellite pools even met "a general description of an association." *Satellite 831104, et al.*, 89 IBLA at 391–92. The Board examined the articles for mutual assent, decision-making procedures and other indicia of an entity genuinely separate from SEC. *Id.* at 392–94. The Board determined ultimately that plaintiffs had violated 43 C.F.R. § 3112.2–1(d) because the Satellite pools were not entities separate from SEC for the purpose of compliance with the regulation, not because "the associations were not bona fide," as plaintiffs contend. Plaintiffs' Motion for Summary Judgment at 13.

■ In an attempt to explain the apparent lack of mutual assent to the articles of the Satellite pools, plaintiffs have submitted the service agreements that the pool members executed individually with SEC. Plaintiffs' Exhibit 1. These service agreements were not before the IBLA, despite the Board's effort to obtain additional information from plaintiffs. A.R. at A 43–

44. Consideration of materials not in the administrative record is improper in this review as to whether the Board's decision was arbitrary and capricious. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. at 420, 91 S.Ct. at 825. Nonetheless, the Court is convinced that this application of 43 C.F.R. § 3112.2–1(d) was not arbitrary and capricious and was, indeed, supported by substantial evidence. *Satellite 8211104, et al.*, 89 IBLA at 391–94; *see also Lead Industries Ass'n. v. EPA*, 647 F.2d 1130, 1146 n. 29 (D.C.Cir.1980) (difference between arbitrary and capricious standard and substantial evidence review is insignificant) (citation omitted).

■ In addition, the IBLA determined that Satellite 8301123 violated 43 C.F.R. § 3112.4–1(b) because Terence Corwin signed the lease offer without proper power of attorney. *Satellite 8211104, et al.*, 89 IBLA at 394. The regulations provide that an attorney-in-fact may sign a lease offer only if his power of attorney precludes him from signing offers on behalf of other SOG participants. 43 C.F.R. § 3112.4–1(b). It is undisputed that Terence Corwin signed the lease offer as the "nominee" and that the articles for Satellite 8301123 designate the nominee as an attorney-in-fact. A.R. at A 33. Thus, on the basis of the articles which Terence Corwin himself executed, the power of attorney was invalid. A.R. at A 34.

On its face, the record shows a violation of 43 C.F.R. § 3112.4–1(b). Accordingly, the IBLA's rejection of Satellite 8301123's SOG application and offer was not capricious. *See also Brick v. Andrus*, 628 F.2d at 216 (Secretary may enforce rigidly SOG rules despite "results that appear unnecessarily harsh.").

Defendant argues further that Satellite 8305121 violated 43 C.F.R. § 3112.6–1(c) for participation in a scheme creating more than one opportunity for a person or entity to obtain an interest in a lease. The Court finds it unnecessary to address this issue, specifically because neither the BLM nor

the IBLA raised it, but also because the record indicates clearly that the Board's decision to reject plaintiffs' SOG applications is supported by substantial evidence of other regulatory violations. *Supra* at 8–12.

### Conclusion

The regulations at issue here were not new. They were in effect at the time plaintiffs filed their applications. *But cf. Lowey v. Watt,* 684 F.2d at 971 (where new regulations or novel interpretations are at issue, prospective application is appropriate). The IBLA's interpretation of these regulations is supported by the plain meaning of those regulations and does not represent any departure from established practice. *See, e.g.,* 44 Fed.Reg. 35156 (1980); 44 Fed. Reg. 56176 (1979). Moreover, the IBLA's findings were neither arbitrary nor capricious, but were supported by substantial evidence. Indeed, in such circumstances defendant's interpretation of its regulations is entitled to great deference. *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. at 416, 91 S.Ct. at 823; *Udall v. Tallman,* 380 U.S. at 16–17, 85 S.Ct. at 801–02. An order is attached affirming the IBLA's decision and granting summary judgment to defendant.

### ORDER

Upon consideration of the parties' cross-motions for summary judgment, the oppositions thereto, the parties' replies, the Administrative Record, the exhibits and affidavits, the entire record herein, and for the reasons set forth in the accompanying opinion, it is by the Court this 21st day of November 1986,

ORDERED that plaintiffs' motion for summary judgment is denied; it is further

ORDERED that defendant's motion for summary judgment is granted and the IBLA's decision is affirmed; and it is further

ORDERED that this case is dismissed.