STAR LAKE RAILROAD
COMPANY, Plaintiff,

v.

Manuel LUJAN,[1] Secretary of the
Interior, Defendant,

and

Navajo Tribe of Indians,
Intervenor–Defendant.

Civ. A. No. 88–2135.

United States District Court,
District of Columbia.

Feb. 27, 1990.

---

1. Pursuant to Fed.R.Civ.P. 25(d)(1), Manuel Lujan has been substituted for Donald Hodel as Secretary of the Interior.

Jerome C. Muys, Thomas W. Wilcox, Will & Muys, P.C., Washington, D.C., Milton E. Nelson, Jr., Richard Weicher, Atchison, Topeka & Santa Fe Railway Co., Jeffrey T. Williams, Santa Fe Southern Pacific Corp., Chicago, Ill., for plaintiff.

R. Anthony Rogers, General Litigation Section, Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

Judith Bartnoff, Patton, Boggs & Blow, Washington, D.C., and Paul E. Frye, Nordhaus, Haltom, Taylor, Taradash & Frye, Albuquerque, N.M., for intervenor-defendant.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

This matter is before the Court on cross motions for summary judgment.[2]  For the

---

**2.** Intervenor Navajo Tribe's Motion to Affirm Agency Action is, therefore, also granted.

Plaintiff also filed a motion for permission to cite new authority, "some published Congres-

reasons elaborated below, the Court grants defendant's motion and denies plaintiff's motion, and this case stands dismissed.

## I. BACKGROUND AND PROCEEDINGS BELOW

Plaintiff Star Lake Railroad (Star Lake) is appealing a final decision by the Interior Department's Interior Board of Indian Appeals (IBIA or Board) affirming the Navajo Area Board of Indian Affairs (Navajo Area BIA) termination of Star Lake's right-of-way on federal lands held in trust by the federal government for the Navajo. *See Star Lake Railroad Co. v. Area Director, Navajo Area Office, Bureau of Indian Affairs and Navajo Tribe of Indians*, 15 IBIA 220 (No. IBIA 86–42–A, July 10, 1987). The following account is derived primarily from the IBIA's decision.

In 1974 Star Lake, a subsidiary of the Atchison, Topeka and Santa Fe Railroad Company (Santa Fe), announced its plans to build a railroad line, connected to an existing line, in northwest New Mexico, for the transportation of coal. This line would cross state, Bureau of Land Management (BLM), tribal trust, tribal fee, private, and federal lands. In December 1979, the BLM granted Star Lake a right-of-way over more than twelve miles of public lands, but would not permit construction to begin until the Navajo Area BIA approved a right-of-way across Indian lands. 15 IBIA 222.

On January 15, 1981, the Assistant Secretary of the Interior–Indian Affairs directed the Navajo Area BIA Director to approve Star Lake's right-of-way across Navajo Trust lands, on the condition that the grant of the easement incorporate an agreement between the Navajo Tribe and the Santa Fe Railway. Administrative Record (AR) Folder D, Tab A. On January 16, 1981, the right-of-way, incorporating the agreement, was approved. In return for the grant, Star Lake agreed to pay $11,672.80 as well as provide certain benefits to the Tribe. AR Folder A, Tab K; 15 IBIA at 223.

The disagreement that prompted the instant action centers on the following language in the grant:

> PROVIDED, that this right-of-way shall be terminable in whole or in part by the Grantor for any of the following causes upon 30 days' written notice and failure of the grantee within said notice period to correct the basis for termination:[3]
>
> A. Failure to comply with any term or condition of the grant or the applicable regulations.
>
> .    .    .    .    .
>
> B. A nonuse of the right-of-way for a consecutive two-year period for the purpose for which it was granted.

AR Folder A, Tab K; 15 IBIA at 223. This language is identical in all material respects to the Interior Department regulations governing rights-of-way on Indian lands. *See* 25 C.F.R. § 169.20 (1987).

At the request of the Tribe, the Area Director wrote Star Lake on October 24, 1984, that the Tribe wished to terminate the right-of-way, primarily because Star Lake had failed for two years to use the easement for its purpose: to construct a railroad line. AR Folder D, Tab J; 15 IBIA at 225. Star Lake responded by letter on November 20, 1984, that although it still intended to construct the rail line, its application to the ICC for permission to build was being opposed and therefore its failure to begin working on the line was involuntary. It did not deny its non-use.

---

sional hearings." It must be denied, because the plaintiff did not timely cite these reports to the agency and offers no excuse for not doing so. Moreover, this Court may only consider material in the administrative record, which is closed. *See, e.g., Satellite 8301123 v. Hodel*, 648 F.Supp. 410, 414 (D.D.C.1986).

**3.** Here the grant cited an earlier version of 25 C.F.R. part 169, which provides, *inter alia,* that all rights of way granted under that part may be terminated by the Secretary on 30–days written notice on grounds identical to those recited in the approval and excerpted above.

AR Folder A, Tab I. On December 21, 1984, the Area Director terminated the right-of-way on the basis of Star Lake's failure to demonstrate that it used the right-of-way for its intended purpose within the allotted time. In the termination letter, the Director noted that Star Lake had not filed any status reports during the first two years of the easement, nor had it requested any extensions of the period of use. 15 IBIA at 225; AR Folder A, Tab G.

During the same period as the events described above, Star Lake was attempting to secure rights-of-way over several lands held in trust by the United States for the benefit of individual Indians. 15 IBIA at 228. These actions by Star Lake were disputed at every stage; administrative findings and appeals, as well as various lawsuits, ensued.[4] Ultimately the Interstate Commerce Commission, following a remand from the Court of Appeals for the District of Columbia Circuit,[5] granted Star Lake authority to construct the railway as a whole, issuing a certificate of public convenience and necessity on April 4, 1987. Interstate Commerce Commission Decision, Finance Docket No. 28272, Star Lake Railroad Co.—Rail Construction and Operation in McKinley County, New Mexico (April 10, 1987) (ICC Decision); AR Folder H, Tab 21.[6] The ICC decision took official notice of the termination of the easement at issue here, ICC Decision at 5, but nonetheless declared the line to be in the public interest. However, it noted, "[o]ur authorization is permissive; applicants will have to obtain the easement or make some other acceptable arrangement before they can construct the line." ICC Decision at 6; *see also id.* at 12 n. 16 ("we do not withhold our approval to operate a rail line ... simply because the applicant has not already obtained all necessary approvals by other authorities."). The Court of Appeals affirmed the certificate. *New Mexico Navajo Ranchers Association v. ICC,* 850 F.2d 729 (D.C.Cir.1988).

Meanwhile, Star Lake appealed the termination decision at issue here to the Acting Deputy Assistant Secretary–Indian Affairs. 15 IBIA at 226. On August 29, 1985, the Deputy remanded the case to the Area Director for his failure to explain his decision adequately. Specifically, the Deputy remanded for an explanation of what was in the Tribe's best interest and "[b]ecause the decision to terminate is a discretionary one and one which rests with the Area Director" and "his reasoning was not adequately explained." AR Folder A, Tab A.

On February 12, 1986, the Area Director affirmed his 1984 termination decision. Two of the Director's findings are of note:

1) Grantee Star Lake failed to demonstrate that it had in any way used the right-of-way for the purpose for which it was intended or to otherwise cure the default including a timely filing of a request for an extension of time. The term of the grant of easement makes it mandatory that the easement be terminated; therefore, no extension of time can be granted.

.    .    .    .    .

3) To extend the grant of easement at this time would only be based upon the 'intentions' of the grantee to use the right-of-way sometime in the future and such 'use' is purely based upon 'speculations' for the future development and marketing of coal leases held by Star Lake sometime in the future.

AR Folder E, Tab B, at 8; 15 IBIA at 226–27.

---

**4.** These matters are set forth in 15 IBIA at 228–31.

**5.** *New Mexico Navajo Rancher's Association v. ICC,* 702 F.2d 227 (D.C.Cir.1983) (remanding decision to ICC for further proceedings to determine the financial viability of Star Lake's proposed rail line and for findings as to whether

Star Lake acted in bad faith in obtaining consents from allottees).

**6.** This decision concerned whether there would be sufficient demand for Star Lake's San Juan Basin coal to make the proposed construction financially viable.

Star Lake appealed this decision to the Assistant Secretary, Indian Affairs, on March 14, 1986; the matter was taken to the IBIA, which ultimately affirmed the decision. This decision by the IBIA constitutes a final action by the Secretary of the Interior.

Star Lake asks this Court to vacate and remand the IBIA decision. It requests a declaration that it is entitled either to a reasonable extension of time in which to commence construction of the railroad line, or to an adjudicatory hearing concerning the Navajo Tribe's alleged involvement in preventing Star Lake's use of the easement. In addition, Star Lake asks for a declaration that the Secretary must comply with the National Environmental Policy Act before he can lawfully terminate Star Lake's right-of-way.

## II. DISCUSSION

### A. Standards

Summary judgment is appropriate when there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R. Civ.Proc. 56(c). The parties have no disagreement as to the facts recited above, facts found by the Administrative Law Judge.[7] Summary judgment, as the parties have proceeded, is therefore an appropriate vehicle for disposition of this matter. In this context, where the Court is being asked to review a final agency action, the inquiry is shaped by the standard of review that the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702–706 (1988), requires in such cases.

■ The role of a Court in reviewing final agency actions is extremely limited. Section 706 of the APA provides that a court may set aside an agency action only where it finds the action "arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law." 5 U.S.C. § 706(2)(A). Under this standard, there is a presumption in favor of the validity of administrative action. A court cannot substitute its judgment for that of the agency. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). Where, as here, the action at issue involves an interpretation by the agency of its own statute and regulations, the court must be especially deferential. *See United States v. Rutherford*, 442 U.S. 544, 553, 99 S.Ct. 2470, 2475, 61 L.Ed.2d 68 (1979); *Satellite 8301123 v. Hodel*, 648 F.Supp. 410, 413 (D.D.C.1986).

■ Plaintiff argues that the Board's decision involved "solely a legal question" and, therefore, should be subject to the heightened scrutiny of *de novo* review. While it is true that some questions of law require a reviewing court to cast aside the normal deference, plaintiff's argument fails to acknowledge the importance of the fact that the IBIA and the Secretary were interpreting and applying Department of Interior regulations. *De novo* review is inappropriate in such circumstances; it is reserved for those administrative decisions "that rest[ ] solely on principles of law unrelated to the statutes or regulations that the agency regularly interprets." *Lowey v. Watt*, 684 F.2d 957, 965 (D.C.Cir.1982); *see also Satellite 8301123*, 648 F.Supp. at 413. The Department of Interior is charged with implementing the statute and developing the regulations; the decision is clearly within its area of expertise.

■ Rather than *de novo* review, then, this Court must afford the IBIA decision "the high level of deference" due "when the issue turns on the interpretation of the agency's own prior proclamations." *Wichita & Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765, 778 (D.C.Cir.1986). Thus to affirm the IBIA's decision requires only that the Court find reasonable the

7. Star Lake "has no disagreement with any of the material facts set forth in the Secretary's memorandum," but asserts that "the broader factual statement submitted by Star Lake is the necessary foundation to resolve the legal issues raised by the pleadings." Plaintiff's Response to Motions for Summary Judgment of the Defendant Secretary of the Interior and Intervenor-Defendant Navajo Tribe of Indians, at 2.

**108**

IBIA's interpretations of the agreement, the right-of-way, and the statutes and regulations. The decision need not even be one that this Court would independently reach, given the findings and the law; it need only be reasonable. *Aluminum Co. of America v. Central Lincoln Peoples' Utility District*, 467 U.S. 380, 389, 104 S.Ct. 2472, 2479, 81 L.Ed.2d 301 (1984); *see also Chevron U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

Nonetheless, this deference is not abdication. The record must be scrutinized to determine "whether the decision was based on a consideration of relevant factors and whether there has been a clear error of judgment." *Overton Park*, 401 U.S. at 416, 91 S.Ct. at 823. The Court must also find that the relevant factors on which the decision is based are supported by some evidence. *Doe v. Hampton*, 566 F.2d 265, 271 n. 15 (D.C.Cir.1977), *quoted in Ritter Transportation, Inc. v. ICC*, 684 F.2d 86, 88 (D.C.Cir.1982), *cert. denied*, 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983).

**B. Star Lake's Arguments**

The IBIA decision squarely positioned the issue: whether the Navajo Area BIA had authority to excuse Star Lake's admitted non-use of the right-of-way, when the Navajo tribe objected to excusing the non-use. In resolving this question, the IBIA Administrative Law Judge looked to the applicable federal statutes and regulations, the agreement that established the right-of-way, and the earlier agreement between Star Lake and the Navajo.

Plaintiff's claims can be summarized as follows:[8] First, it seeks to overturn as arbitrary and capricious the IBIA's affirmance upholding the termination of its right-of-way for non-use. Star Lake contends that, rather than non-use, it was *prevented* from using the land in question, and hence

should be excused from that requirement of the contract. Plaintiff further argues that the Secretary, through the Navajo Area BIA, had discretion under 25 C.F.R. § 169.20 with regard to the termination, and was therefore not compelled by the regulation to terminate its easement. Furthermore, not only did the Secretary in fact have discretion, plaintiff continues, he abused this discretion (and hence violated the APA) by not denying the Indians' initial request for termination. Finally, Star Lake argues that it is entitled as a matter of law to an adjudicatory hearing to develop facts with regard to whether the Indian tribes prevented use of the right-of-way. The Area Director, and the IBIA on appeal, rejected all these arguments.[9]

1. *Whether the Termination was Discretionary.*

The right-of-way at issue here is governed by the federal Rights-of-Way Through Indian Lands Act, 25 U.S.C. §§ 311–328 (1982), and the implementing regulations found at 25 C.F.R. Part 169 (1987). While the statute does not mention termination, the regulation, as noted above, does provide for termination in certain circumstances, upon due notice and opportunity for correction by the grantee. The question is whether termination is discretionary. More exactly, the issue is whether the termination provision of this particular easement could have been, and should have been, tolled under the circumstances.

In support of its argument that termination was discretionary, and not mandatory as the Navajo Area BIA Director found and the IBIA affirmed, Star Lake points to the language of the right-of-way grant. The grant itself, *see* AR Folder A, Tab K, at 2, states that the right "shall be terminable" which, plaintiff correctly points out, means "capable of being terminated."

**8.** Plaintiff raised these same arguments in its administrative appeals. *See, e.g.*, Reply Brief of Appellant Star Lake Railroad Co. Before the Interior Board of Indian Appeals, Docket No. IBIA 86–424–A (1986); AR Folder H, Tab 7; 15 IBIA at 231–33.

**9.** The IBIA denied Star Lake's petition for reconsideration of its decision with regard to its request for an evidentiary hearing. *See Star Lake Railroad Co. v. Area Director, Navajo Area Office, Bureau of Indian Affairs*, IBIA 86–42–A (Reconsideration), 15 IBIA 271 (August 19, 1987).

Plaintiff's Response to Defendant's Motion for Summary Judgment (Plaintiff's Response) at 9. Similarly, the regulation from which the grant's language is drawn, 25 C.F.R. § 169, provides that rights-of-way *"may* be terminated" (emphasis added).

The IBIA agreed with Star Lake that the *regulation's* conditional language "allows for the exercise of some discretion." 15 IBIA at 236. "However," the Board continued, "that discretion is subject to limitation by Federal, statutory and case law and, in this case, also by the provisions of the grant of easement and the agreement incorporated therein," to the extent they do not conflict with federal law. *Id.* at 236–37. In this case the Director complied with the grant and the applicable law, and Star Lake failed to fulfill the requirements that would have prevented termination or to make timely efforts to secure extensions of time which, if granted, might have permitted the fulfillment of those requirements.

Star Lake insists that the "plain purpose" of the regulation is "to afford a right-of-way grantee an opportunity to explain the reason for its non-use, so that the Secretary may exercise his discretion" to excuse the grantee from the grant's conditions. Plaintiff's Response at 10. But as the Director, and then the IBIA, pointed out, the regulation recites that once a grantee has been notified and fails to correct a problem that is the basis for termination, the Secretary *"shall"* terminate the right-of-way. Nowhere, either on the face of the regulation, or even implied, is there room for excuse or tolling. The IBIA did not abuse its discretion by accepting this completely reasonable reading by the Navajo Area BIA of a regulation it administers.

Moreover, this interpretation does not conflict with federal statutes, policies, or case law. The IBIA thoroughly considered related statutes that *do* provide for discretion and that excuse conditions of easements and other grants of public lands. *See* 15 IBIA at 237–39. Given the *difference* between those statutes and the statute and regulations at issue here—the former specifically provide for such exceptions,[10] while the Indian Right of Way Act does not—the IBIA properly declined to read similar exceptions into plaintiff's grant of easement.[11] The IBIA, as required, carefully considered "relevant factors," *Overton Park,* 401 U.S. at 416, 91 S.Ct. at 823, including the weighty rule that statutes and regulations intended to benefit Indians be liberally construed in their favor. *Bryan v. Itasca County,* 426 U.S. 373, 392, 96 S.Ct. 2102, 2112, 48 L.Ed.2d 710 (1976); *Jicarilla Apache Tribe v. Andrus,* 687 F.2d 1324, 1332 (10th Cir. 1982).

The IBIA's interpretation of the regulation, and hence the Secretary's affirmance thereof, is not unreasonable and must be affirmed.[12]

### 2. *Denial of Star Lake's Request for an Adjudicatory Hearing.*

█ Star Lake asserts that the Board abused its discretion by denying Star Lake's request for an adjudicatory hearing. The Board's conclusion, that no adjudicatory hearing was required because the matter was disposed of entirely by resolution of the legal question, also deserves this Court's deference.

Star Lake argues that it must have an adjudicatory hearing to determine whether the Indians, either collectively (as the Tribe) or individually, deliberately impeded

---

**10.** *E.g.,* Federal Land Policy and Management Act of 1976, 43 U.S.C. § 1766 (1982); Mineral Leasing Act of 1920, 30 U.S.C. § 185(*o*)(3) (1982).

**11.** Even were the Court to find that the policies and equitable principles found in similar laws should be read into the statute, it would nonetheless defer to the Secretary because the same decision could have been reached without contravening these policies. For example, the Sec-

retary could have found that the policy favoring Indians overrode the equitable protection provided to Star Lake, especially since Star Lake knew of the 2–year provision but did not request any extensions.

**12.** Given this conclusion, the Court need not consider Star Lake's other arguments concerning the right-of-way grant and the regulations.

Star Lake's use of the right-of-way during the two-year period by various court and administrative challenges. With this allegation Star Lake is attempting to invoke equitable tolling of the two-year limitation by coming under the rule of *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324 (10th Cir.1982). In that case, the Court of Appeals for the Tenth Circuit upheld the tolling of the terms of certain oil and gas leases from the Apache Tribe because the Tribe, by suing the lessees, had obstructed the lessees' efforts to perform under the leases. Star Lake asks for the opportunity to develop evidence that the Tribe covertly acted much in the same way to frustrate its efforts to obtain the approvals needed to begin using the easement. And, if such evidence were found, it contends, Star Lake would be entitled to similar equitable tolling under *Jicarilla.*

The only support of Star Lake's allegation of wrongful obstruction by the Tribe is that the attorney representing the Navajo Tribe in the instant dispute formerly represented the individual Navajos involved in the ICC challenge. Nothing in the record, the Board noted, indicates that "the tribe took any action to impede appellants use of the right-of-way during the first 2 years of its existence." 15 IBIA at 247. It was therefore reasonable for the Board to conclude that no genuine issue was presented and that the only proffers of evidence were speculative at best.

Furthermore, Star Lake has provided no explanation as to why it did not request, as frequently as necessary, an appropriate extension of time while the litigation progressed and the time continued to evaporate. Even more puzzling is that Star Lake did not request that the non-use provision be tolled *until* the two-year period of non-use had passed. This fact alone distinguishes *Jicarilla* from the facts in this case.

The IBIA's findings, more than adequately supported by the law, will not be disturbed. *See, e.g., General Motors Corp. v. FERC*, 656 F.2d 791, 798 n. 20 (D.C.Cir. 1981). "[T]he standard of review which applies to an agency's decision to forego an evidentiary hearing in the absence of a disputed factual issue is quite narrow." *Cerro Wire & Cable Co. v. FERC*, 677 F.2d 124, 129 (D.C.Cir.1982). No evidentiary hearing is required when there is no issue of material fact in dispute. *Id.* at 128–29. "[M]ere allegations of disputed facts are insufficient to mandate a hearing; petitioners must make an adequate proffer of evidence to support them." *Id.* at 129. In the instant case, the IBIA did not find adequate evidence; we do not disagree.

Deference is also mandated with regard to this issue because Department of Interior regulations make the decision whether to hold an evidentiary hearing entirely discretionary with the Board: "where the record indicates a need for further inquiry to resolve a genuine issue of material fact, the Board *may* require a hearing." 43 C.F.R. § 4.337 (1987) (emphasis added). This is an area committed to the Board's sound discretion and the IBIA has presented reasoned findings to support its discretion. The IBIA's conclusion on this issue is eminently appropriate and this Court will uphold that determination.

### 3. *Star Lake's NEPA claim.*

■ Star Lake's final argument is that the Area Director's decision should be overturned because it violated the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–4370b (1982). This claim lacks merit.

Star Lake bases its argument on the fact that the BLM prepared a comprehensive environmental impact statement (EIS) as required by NEPA, *see* 42 U.S.C. § 4332, on the proposed railroad and coal development in the San Juan Basin. The route via the right-of-way was found in that EIS to be the most cost-effective and least environmentally damaging. Star Lake contends that terminating the right-of-way will therefore require it "to use a longer, more environmentally damaging alternative route." Plaintiff's Response at 22. Accordingly, Star Lake claims that the termination constitutes a major federal action under NEPA, requiring the preparation of a new EIS.

There is some dispute as to whether this argument was raised at the administrative level. According to the defendant, plaintiff only raised this question at the administrative level in its reply brief before the IBIA, at the last moment in the last administrative proceeding. The Board's decision does not discuss it. If indeed the claim was not presented to the agency in the first instance, it cannot be pressed on this Court. *Washington Association for Television & Children v. FCC*, 712 F.2d 677, 680 (D.C. Cir.1983).

Assuming, however, that this claim is properly before the Court, it nonetheless cannot be considered here because it is not ripe. An EIS is required only when there is a proposal for a major federal action. 42 U.S.C. § 4332. No such federal action has yet been proposed; a route other than through the tribal lands may be more environmentally damaging, but no route has yet been designated or even suggested. *See Kleppe v. Sierra Club*, 427 U.S. 390, 399, 406, 96 S.Ct. 2718, 2725, 2728, 49 L.Ed.2d 576 (1976). Accordingly, plaintiff's NEPA claim is dismissed.

## III. CONCLUSION

It is the hallmark of judicial review of agency action that the petitioner has the heavy burden of persuading the reviewing court to discard its deferential approach. To do so, it must demonstrate that the agency's action reflects a clear error of judgment. Plaintiff Star Lake, while it may be aggrieved by the IBIA decision, has failed to do so.

Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment and defendant-intervenor's motion to affirm agency action be and hereby are granted; it is

FURTHER ORDERED that plaintiff's motion for summary judgment be and hereby is denied; it is

FURTHER ORDERED that all other pending motions in this case be and hereby are dismissed as moot; it is

FURTHER ORDERED that this case is dismissed.

IT IS SO ORDERED.