Porfiria AVENA, Plaintiff,

v.

**IMMIGRATION & NATURALIZATION SERVICE, et al., Defendants.**

No. Civ.A. 97–0402 (GK).

United States District Court, District of Columbia.

Nov. 7, 1997.

**2**

Robert L. Oswald, Noto & Oswald, P.C., Washington, DC, for plaintiff.

Jerri U. Dunston, Asst. U.S. Atty., Washington, DC, for defendant.

### MEMORANDUM OPINION

KESSLER, District Judge.

This matter is before the Court on Plaintiff's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 [# 19] and Defendants' Cross–Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 [# 18]. Plaintiff seeks declaratory judgment setting aside decisions of the Defendant, Immigration & Naturalization Service ("INS"), denying her Special Immigrant Religious Worker Petition. Plaintiff brings this action under the Administrative Procedure Act, 5 U.S.C. § 551 et seq. (the "APA") and the Immigration and Nationality

Act of 1990 (the "Act"), as amended, 8 U.S.C. § 1101 et seq.

Upon consideration of the Cross–Motions, Oppositions, Replies, and the entire record herein, the Defendants' Motion for Summary Judgment is **granted** and Plaintiff's Motion for Summary Judgment is **denied.**

### I. Background [1]

Plaintiff Porfiria Avena is a native and citizen of the Philippines. Plaintiff has been a member of the Seventh-day Adventist Church for over thirty-four (34) years. Since 1992 Plaintiff has been working for the Pearl River Seventh-day Adventist Church in Staten Island, New York as a Cradle Roll teacher, deaconess, and personal ministries secretary. (A.R. 139.)

Defendant INS, located within the Department of Justice, is responsible for administration and implementation of the nation's immigration laws.

On April 14, 1995, Plaintiff submitted an I–360 Petition for classification as a special immigrant [2] religious worker with the INS Eastern Regional Service Center. (A.R. at 12.) The Petition was based on her work as a Cradle Roll teacher, deaconess, and personal ministries secretary for the Pearl River Seventh-day Adventist Church. That Petition was denied on November 22, 1996, by Defendant Edward H. Skerrett, the Acting Director of the INS' Office of Administrative Appeals' (the "OAA"). (A.R. at 152–56.)

Attached to Plaintiff's Petition was a letter dated April 7, 1995, from her pastor, Dr. Rollin Shoemaker. The letter described the current duties for each of Plaintiff's positions of Cradle Roll teacher, deaconess, and personal ministries secretary. (A.R. at 161–162.) As a Cradle Roll teacher, Ms. Avena prepared teaching materials and instructed children. As a deaconess, Ms. Avena cared for the sick and needy, cared for the church and its property, assisted in baptism ceremonies, helped to prepare bread for the Lord's Supper, and took care of bread and wine at the ordinance table. As a personal ministries secretary, Ms. Avena attended and kept

---

1. All facts are taken from the Administrative Record.

2. The term "special immigrant" is defined in 8 U.S.C. § 1101(a)(27)(C).

the minutes at missionary meetings, ordered supplies, did minor accounting, monitored offerings and available literature, reported on activities of church members and/or ministries, and reported on personal ministries and church accounts at meetings. (A.R. at 161–162.)

On May 25, 1995, the Vermont Center Director issued a Notice of Action and request for further documentation supporting the claims that Plaintiff was employed for the required two year period in a full-time religious vocation, and that the. Pearl River Church had the ability to pay Plaintiff's "proffered wages".[3] (A.R. at 153.) Also, the Vermont Center Director requested that Plaintiff submit a detailed listing of the duties required for each position and amount of time spent performing these duties. (A.R. at 153.)

Accordingly, on August 2, 1995, Plaintiff submitted the requested documentation in support of her response to the Notice of Action.[4] Included in this response was a second letter from the pastor of Plaintiff's church. This letter neglected to mention the position of personal ministries secretary in the list of positions held by Plaintiff, and failed to include a breakdown of the hours Plaintiff spent performing her various duties. (A.R. at 139, 154.)

On September 19, 1995, the Vermont Center Director denied Plaintiff's Petition for Special Immigrant Religious Worker. (A.R. at 152–156.) In his denial the Center Director found that the Plaintiff had not worked continuously on a full-time basis in her religious occupation for a two year period prior to filing her Petition. The Center Director also found that the duties Plaintiff had carried out did not require "any specific reli-

gious training beyond that of a dedicated and caring member of the religious organization". (A.R. at 154.), Finally, the Center Director found that the record lacked any detailed listing of the Plaintiff's proposed duties, the hours Plaintiff was to spend each week performing these duties, and evidence of the Pearl River Church's ability to pay the proffered wage. (A.R. at 154.)

On October 25, 1995, the Commissioner received Plaintiff's Notice of Appeal. On November 21, 1995, Plaintiff submitted a brief and ·additional evidence in support of her appeal.[5]

On November 22, 1996, the OAA of the INS issued a decision affirming the ruling of the INS Vermont Center Director, and dismissing Plaintiff's appeal on the ground that she "had not established that she had been engaged continuously in a qualifying religious vocation or occupation for two full years immediately preceding the filing of the [P]etition" and that the proposed employer did not have the ability to pay the Plaintiff the proffered wage. Moreover, the OAA "determined that the petitioner had not established that she was qualified for a religious worker position, or that the position offered qualified as. that of a 'religious worker'." (A.R. at 138–145.)

Plaintiff claims that she is a religious worker and as such is qualified for the requested status under Section 1101(a)(27) of the Act, which permits the classification of individuals qualified to perform the duties of a traditional religious occupation as "special immigrants". Plaintiff challenges the INS decision to deny her I–360 Petition and seeks a declaratory judgment setting aside the decisions of the Vermont Center Director and the OAA. Specifically, Plaintiff argues that:

---

3. The term "proffered wages" is used in 8 C.F.R. § 204.5(g)(2) when discussing the ability of the prospective employer to pay the employment-based immigrants salary.

4. The documentation included the following: an offer of employment by the Pearl River Church; letters from Abner S. Roque, President of the Central Luzon Conference of the Seventh-day Adventist Church, and from Georgia Fabila, Church Secretary of the South Luzon Mission, attesting that Plaintiff has the special qualifications to perform the proposed job; and docu-

mentation confirming the status of the General Conference of Seventh-day Adventists and its subsidiaries' as a tax-exempt 501(c)(3) non-profit religious organization. (A.R. 185–197.)

5. The additional evidence included a letter dated November 10, 1995, from Dr. Rollin Shoemaker describing the specific duties performed by the Plaintiff, the amount of time spent on these duties, and the net income of the Pearl River Seventh-day Adventist Church for 1994. (A.R. at 31–32.)

1) the INS abused its discretion by requesting additional evidence regarding type and duration of employment at the Pearl River Church; 2) the INS misinterpreted 8 C.F.R. § 204.5(g) as it applies to an employer's ability to pay; and 3) the INS decision is inconsistent with its prior rulings.

## II. Standard of Review [6]

This Court is bound by a highly deferential standard of review for agency action. Under the APA, an agency's action may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). In making this finding, the Court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). The Court may not substitute its judgment for that of the agency. *Id.; Star Lake R. Co. v. Lujan,* 737 F.Supp. 103, 107 (D.D.C.1990), *aff'd,* 925 F.2d 490, 1991 WL 18461 (D.C.Cir.1991). The Court's role is to ensure that the agency's decision was based on relevant factors and not a "clear error of judgment." *Citizens,* 401 U.S. at 416, 91 S.Ct. at 824. If the "agency's reasons and policy choices . . . conform to 'certain minimal standards of rationality' . . . the rule is reasonable and must be upheld." *Small Refiner Lead Phase–Down Task Force v. U.S. EPA,* 705 F.2d 506, 521 (D.C.Cir.1983) (citations omitted).

■ Moreover, a court should accept an agency's interpretation of its own regulations unless that interpretation is "plainly erroneous". *MobileTel, Inc. v. FCC,* 107 F.3d 888, 894 (D.C.Cir.1997). Deference is due even where the petitioner advances a more plausible reading of the statute. *General Elec. v. U.S. EPA,* 53 F.3d 1324, 1327 (D.C.Cir.1995). This standard presumes the validity of agency action. *Ethyl Corp. v. EPA,* 541 F.2d 1, 34 (D.C.Cir.1976) (en banc), *cert. denied* 426

U.S. 941, 96 S.Ct. 2663, 49 L.Ed.2d 394 (1976).

## III. Analysis

Plaintiff challenges the INS conclusion that the positions of Cradle Roll teacher, deaconess, and personal ministries secretary were not religious occupations as defined in the statute and/or pertinent regulations. Plaintiff asserts that the INS decision was arbitrary, capricious, an abuse of discretion, or contrary to law, under the APA. In addition, Plaintiff argues that the INS disregarded the statute and/or its own regulations in requiring additional proof that the Plaintiff had two years of experience as a religious worker.

Defendants respond that substantial deference should be given to the Agency's interpretation of the governing federal statutes and regulations. Defendants also argue that Plaintiff failed to carry her burden of demonstrating that, under 8 U.S.C. § 1101(a)(27), she would be performing duties in an active religious role and that she had been performing such duties for a two year period prior to her application for special immigrant status.

### A. Deference Under the Rule of *Chevron*

The issue raised by Plaintiff's first argument is whether this Court must defer to the agency's interpretation of the statute and regulations. A court's review of an agency's action for arbitrary and capricious conduct is an extremely deferential one. This is particularly true where an agency is interpreting a statute which Congress specifically entrusted to it and where it has special expertise, or where an agency is interpreting its own regulations. *See MobileTel, Inc.,* 107 F.3d at 894. "Under the familiar rule of *Chevron,* courts accord deference to an agency's interpretation of a statute it administers." *Bush–Quayle '92 Primary Committee, Inc. v. FEC,* 104 F.3d 448, 452 (D.C.Cir.1997) (citing *Chevron U.S.A. Inc. v. NRDC,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

**6.** In Defendants' Opposition to Plaintiff's Motion and in Defendants' own Motion to Dismiss or in the Alternative for Summary Judgment, Defendants treat their Motion as one for summary judgment rather than as a motion to dismiss. Consequently, the Court will also treat Defendants' Motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b).

■ *Chevron* requires a two-step analysis. First, a court must look to the plain meaning of the statute to determine whether Congress has spoken to the precise question at issue. *Id.* at 842, 104 S.Ct. at 2781. If it has, then the court must give effect to the clearly expressed intent of Congress. *Id.* at 842–43, 104 S.Ct. at 2781–82. Second, if the statute is silent or ambiguous, the agency's interpretation should be upheld so long as it is a "permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782. A court "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question originally had arisen in a judicial proceeding." *Id.* at 843 n. 11, 104 S.Ct. at 2782 n. 11.

### 1. Application of the *Chevron* two-step test

■ The first step of the *Chevron* test requires examination of the plain meaning of the statute. Pursuant to 8 U.S.C. § 1101(a)(27)(C)(i)–(iii), a person applying for special immigrant status must "for at least two years immediately preceding the time of application ... ha[ve] been a member of a religious denomination having a bona fide nonprofit, religious organization in the United States." The applicant must also have been carrying on such vocation "continuously for at least a two year period" immediately preceding the time of application.

The implementing regulations, 8 C.F.R. § 204.5(m)(2) and (3), define "religious occupation" and require that a special immigrant religious worker petition contain certain initial evidence. "Religious occupation" is defined as:

> [A]n activity which relates to a traditional religious function. Examples of individuals in religious occupations include, but are not limited to, liturgical workers, religious instructors, religious counselors, cantors, catechists, workers in religious hospitals or religious health care facilities, missionaries, religious translators, or religious

broadcasters. This group does not include janitors, maintenance workers, clerks, fund raisers, or person solely involved in the solicitation of donations. 8 C.F.R. § 204.5(m)(2).

"Initial evidence" is defined to include a letter from a current or former employer providing "evidence of qualifying experience or training and a specific description of the duties performed by the alien" and evidence of the "prospective employer's ability to pay the proffered wage". 8 C.F.R. § 204.5(g)(2).

On its face the statute does not specifically describe the type or quantum of evidence which must be produced in order for an applicant to qualify as a special immigrant religious worker. The regulations, however, only provide a short list of examples of individuals in religious occupations.[7] By no means is this list exhaustive. Therefore, it can not be said that Congress spoke with such clarity that the issue can be fully resolved by looking only at the plain meaning of the statute. The Court must proceed to the second step of the *Chevron* analysis.

Under *Chevron's* second step, the Court must uphold an agency's interpretation so long as it is a "permissible construction of the statute." *Chevron* at 843, 104 S.Ct. at 2782. In the instant case, Plaintiff argues that the conclusion reached by the INS was unreasonable because the positions held by the Plaintiff were similar to those specified in 8 C.F.R. § 204.5(m)(2). Defendant counters that the INS implemented Congressional intent and concluded in a reasonable manner, based upon the evidence, that Plaintiff's duties as Cradle Roll teacher, deaconess, and personal ministries secretary do not qualify as religious work under 8 C.F.R. § 204.5(m)(2) and (m)(3).

In determining that all the evidence submitted by Plaintiff, with her initial Petition and then later at the agency's request, was insufficient to support her claimed status as a special immigrant worker, the INS reasonably interpreted the statute and its pertinent regulations. The OAA stated that "although the record does list some duties of the peti-

---

7. The religious vocations listed include: liturgical workers, religious instructors, counselors, cantors, and catechists, workers in religious hos-

pitals or religious health care facilities, missionaries, and religious translators or broadcasters. 8 C.F.R. § 204.5(m)(2).

**6**

tioner, it does not provide a comprehensive description of the petitioner's activities during the two-year period immediately preceding the filing date of the petition." Without a comprehensive list of duties and the hours spent performing these duties the OAA was unable to determine whether the positions held by Plaintiff were traditional religious occupations.

The INS' determination was consistent with the legislative history which clearly states that Congress wanted the special immigrant religious worker visa to be extended only to "immigrants engaging in traditional religious functions", and not to immigrants engaging in administrative and other support functions. H.Rep. 723(I), 101st Cong., 2 Sess., reprinted in 8 U.S.S.C.A.N. 6710, 6755 (1990). The conclusion that the positions held by Plaintiff did not qualify as traditional religious occupations under 8 C.F.R. § 204.5(m)(2) and (m)(3) is reasonable and deserves the due deference of this Court.

**2. Plaintiff's alternative arguments pertaining to "religious occupation".**

Plaintiff also submits two alternative arguments pertaining to the "religious occupation" determination by the INS. Plaintiff argues first that the request for additional evidence by the Vermont Center Director went beyond the scope of the regulations. Plaintiff then asserts that even if the additional evidence requested was within the scope of the regulations, she was not given the opportunity to submit the requested additional evidence.

■ In support of the first argument, Plaintiff maintains that the Vermont Center Director abused his discretion by requiring more evidence than is required under the statute or by 8 C.F.R. § 204.5(m)(3)(ii). Plaintiff states that 8 C.F.R. § 204.5(m)(3)(ii) requires only a letter from an authorized official of the religious organization as evidence of the two years of prior work.

The first requirement under 8 C.F.R. § 204.5(m) is for the submission of "initial evidence" in support of a petition for a special immigrant religious worker petition. Plaintiff submitted this initial evidence in the form of an offer of employment, letters attesting that she has the special qualifications to perform the proposed job, and documentation of the Church's tax exempt status as a 501(c)(3) non-profit religious organization. The INS concluded that this evidence failed to demonstrate that Plaintiff actually held a religious occupation for two years prior to filing the petition. INS then requested further documentation pursuant to 8 C.F.R. § 204.5(m)(3)(iv), which specifically provides that:

> In appropriate cases, the director may request appropriate additional evidence relating to the eligibility under section 203(b)(4) of the Act of the religious organization, the alien or the affiliated organization.

Thus, it is clear that INS' request for additional information falls squarely within the scope of 8 C.F.R. § 204.5(m).[8]

■ In addition to claiming that INS had no right to ask for additional information, Plaintiff also maintains that she was not given the opportunity to submit such additional information. The administrative record, however, clearly demonstrates that on May 25, 1995, the Vermont Service Center specifically requested additional evidence concerning proof of Plaintiff's two years of experience in religious work. (A.R. at 174–176.) In his denial of Plaintiff's petition, the Vermont Service Director expressly listed the information Plaintiff had failed to provide to cure the deficiencies in her Petition. (A.R. at 154–156.) On appeal from the Director's denial, Plaintiff again failed to address the deficiencies in her proof of the two year period of prior religious work. (A.R. at 138–144.) Thus, Plaintiff was given two clear opportunities to augment her evidence and failed to do so.

8. In response to the Director's May 25, 1995 request for additional evidence the Plaintiff stated:

"The General Conference of Seventh-day Adventists, ... [a]s of January 1, 1993, ... had over 6 million members worldwide, annual contributions in excess of $1 billion, and assets valued in excess of $3.5 billion." (A.R. 155–56.)

## B. Ability to Pay

■ Plaintiff further alleges that the Defendants misinterpreted 8 C.F.R. § 204.5(g)(2) which states that "[a]ny petition filed by an employment-based immigrant which requires an offer for employment must be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage." The OAA found that "the petitioner [did] not adequately establish that her proposed employer [ ] had the ability to pay her the proffered wage."

Evidence of this ability must either be in the form of annual reports, federal tax returns, or audited financial statements. 8 C.F.R. § 204.5(g)(2). The regulation, however, makes one exception: "where the prospective United States employer employs 100 or more workers, the director may accept a statement from a financial officer ... which establishes the ... ability to pay the proffered wage." 8 C.F.R. § 204.5(g)(2). Plaintiff asserts that the Pearl River Church falls within this exception and that, therefore, the 1994 financial statement signed and dated by the Treasurer of the Church fulfills that requirement. Plaintiff also claims that her May 25, 1995, reply submitted in response to the Vermont Center Director's request for additional evidence further establishes the Pearl River Church's ability to pay.

The OAA found that Plaintiff failed to satisfy the Regulation in several ways. First, the financial statement submitted by Plaintiff was not audited as required by § 204.5(g)(2). Second, Plaintiff failed to submit any evidence that the Pearl River Church had more than 100 employees and was therefore eligible for the 100–employees exception. Third, the evidence submitted by Plaintiff of the assets of the General Conference of Seventh-day Adventists is irrelevant since it was not established that the General Conference would be the entity paying the wages of local religious workers, and Plaintiff in particular. Therefore, the OAA concluded that Plaintiff failed to submit any of the required evidence under § 204.5(g)(2) of the employer's ability to pay.

It is clear that the OAA reasonably concluded that the evidence submitted by Plaintiff was insufficient to support her claim that the Pearl River Church had the ability to pay her proffered wage.

## C. Prior INS Rulings and Department of State Regulations

Plaintiff's final argument is that the INS decision was arbitrary and capricious because it did not follow three prior INS decisions granting religious worker petitions to people who, in Plaintiff's view, engaged in religious occupations similar to the positions she held at the Pearl River Church.[9] Additionally, Plaintiff argues that the INS abused its discretion by disregarding the Department of State's definition of a "religious occupation" contained in 9 Foreign Affairs Manual § 41.58(g).

■ Pursuant to 8 C.F.R. § 103.3(c), only designated INS decisions are binding on the OAA or others in the agency. None of the INS decisions cited by Plaintiff have been designated as binding precedent. Consequently, they were not binding in this case. An intra-agency difference of opinion does not mean that the INS determination was incorrect when it found that the positions held by Plaintiff at the Pearl River Church did not qualify as "religious occupations". *FTC v. Anderson,* 631 F.2d 741, 745 (D.C.Cir. 1979) ("[T]he fact that another ALJ in an unrelated proceeding had a different interpretation of the regulations establishes nothing more than the existence of conflict within the Commission ...").

■ The Department of State defines a "religious occupation" as "the habitual employment or engagement in an activity which relates to a traditional religious function." 9 Foreign Affairs Manual § 41 .58(g). Plaintiff argues that by denying Plaintiff's petition, the INS went beyond the scope of its own regulatory requirements and in turn abused its discretion by not following the more expansive Department of State definition. However, Plaintiff bases this argument on the assumption that the INS is required to

---

9. *See Matter of EAC* 92 261 51775, 12 Immig.Rptr. B2–71, 73 (AAU Sept. 21, 1993); *Matter of EAC* 93 037 52389, 12 Immig.Rptr. B2– 138, 139 (AAU Nov. 29, 1993); *Matter of EAC* 93 100 50292, 12 Immig.Rptr. B2–110 (AAU Nov. 22, 1993).

follow the Department of State's definition of "religious occupation". There is no requirement, either in the governing statute or case law, that INS follow the Department of State definition. The INS has followed the definition of "religious occupation" as formulated in 8 C.F.R. § 204.5(m)(2) and this Court has concluded above that the INS interpretation of this regulation was reasonable.

## IV. *Conclusion*

Plaintiff has failed to meet the statutory requirements of 8 U.S.C. § 1101 *et seq.* as they pertain to special immigrant religious worker status. Plaintiff has failed to demonstrate that the positions of Cradle Roll Teacher, deaconess, and personal ministries secretary qualify as a "religious occupation" under the statute, that she held these positions for two years prior to the filing of her Petition, and that the Pearl River Seventh-day Adventist Church has the ability to pay her salary. Therefore, the decision by the INS to deny Plaintiff's Petition for special immigrant worker visa pursuant to Section 1101(a)(27) of the Immigration and Naturalization Act was not arbitrary, capricious, or otherwise contrary to law. For the reasons discussed above, Defendants' Motion for Summary Judgment is **granted** and Plaintiff's Motion for Summary Judgment is **denied.**

